William HAYWARD, Petitioner,

v.

**EMPLOYMENT SECURITY COMMISSION of the State of Delaware and Security Storage Company, Respondents.**

Superior Court of Delaware, New Castle.

Oct. 11, 1971.

Joseph M. Bernstein, of Community Legal Aid Society, Wilmington, for plaintiff.

Howard L. Williams, of Morris, James, Hitchens & Williams, Wilmington, for respondent, Security Storage Co.

Jay H. Conner, Wilmington, for Employment Security Commission.

STIFTEL, President Judge.

This is an unemployment compensation case. Unemployment Insurance Appeal Board disqualified William Hayward from benefits, deciding that he was discharged from his work for just cause under section 3315(2).

The meaning of "just cause" was commented upon in Abex v. Todd, Del.Super., 235 A.2d 271, 272:

"* * * Generally, the term 'just cause' refers to a wilful or wanton act in violation of either the employer's interest, or the employee's duties, or of the employee's expected standard of conduct."

The following are the facts on which the referee and the Board purportedly relied for disqualification:

Mr. Hayward began working for Security Storage Company in 1961 and worked there continuously until September 18, 1970. Mr. Hayward ran the King Street warehouse. He was also the Union steward at Security Storage.

In the afternoon of September 18, 1970, Mr. Hayward had an unfortunate confrontation with Mr. David Austin, who was known to Mr. Hayward as "the son of the owner", William B. Austin, and who had been working for the company for two years. On this date, Mr. Hayward was supposed to pay special attention to a Lof-

land moving truck that was to come to pick up furniture from the King Street warehouse. Upon arrival of the truck and crew, Mr. Hayward, with a helper, went upstairs in the warehouse to get a hide-a-bed sofa and was not seen nor heard from again for fifteen to twenty minutes. David Austin, who had just returned from a doctor's appointment, saw the Lofland truck and crew and called upstairs on the inter-com to Mr. Hayward, telling him to hurry with the sofa which he said should have been on the platform before the Lofland truck arrived. Austin said Mr. Hayward became excited and hollered, "Get off my m_____ f_____ back [vulgar], I'll get down there when I get time or I'll bust your head."

Austin then said: "Get down here. These men are waiting." Mr. Austin testified that claimant later:

"* * * became very vulgar in his language, swearing at myself and the rest of management in the presence of women and other men" in the office.

At quitting time, about 4:20 or 4:30, he said that Mr. Hayward was still shouting so that everyone heard and was directing his remarks "to me".

Austin also related that there were other specific instructions to Hayward on the 18th that were not followed out. He said (R.57):

"* * * when I asked him in the office later on Friday why those little jobs were not done, I got the same story about 'I will run this warehouse the way I want to and you can * * *'"

Also, there is a letter in the record from Robert E. Joslin, President, indicating that on June 11, 1970, Hayward had other difficulty with management regarding proper procedures of loading and unloading trucks. The last paragraph of the letter stated as follows:

"This is to advise that if you permit this or are aware that it is being done again, you will be subject to disciplinary action or possible discharge."

Mr. Hayward, in his testimony, related some of his difficulties with management as a shop steward and mentioned that in his capacity, he had to "make management do what they are supposed to do."

■■■ The Board decided the case adversely to claimant. If there is substantial evidence in the record to support its finding, I must uphold it. The record facts indicate that Mr. Hayward's conduct on the 18th evidenced a patent disrespect for management that could not be countenanced. It was wilful and contemptuous. It was not the standard of conduct that one should expect from an employee. The verbal barrage berating David Austin in front of other employees of lesser rank was more than he and management need tolerate. This is not the case of a single, hotheaded, spontaneous outburst, see Johnson v. Richard E. Brown, Jr., La.App., 134 So.2d 388, as claimant asserts; the disrespect continued after the inter-com incident, *cf.* Weaver v. Employment Security Commission, Del.Super., 274 A.2d 446. The insulting and disrespectful language resumed one hour later in the Security Storage office. The June 10th letter indicates that Mr. Hayward had previously been warned about his insubordinate attitude. The strange conduct on the 18th was unconnected with his job as shop steward. The mere holding of this position did not authorize him to be obstreperous toward management. His conduct was wilful and deliberate and not the standard of conduct to be expected from an employee. Testimony by him indicates continued justification for his conduct with no apology. It is true that Mr. Hayward's testimony is completely different from Mr. Austin's. But this is not for my consideration. The Board had a right to believe Mr. Austin and on the record presented, I must uphold its decision.

It is so ordered.