[Civ. No. 31916. First Dist., Div. Four. Mar. 15, 1973.]

ALBERT F. SILVA, Plaintiff and Appellant, v.
ALAN NELSON, as Acting Director, etc., et al.;
Defendants and Respondents.

## Counsel

Lawrence L. Curtice for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, and Asher Rubin, Deputy Attorney General, for Defendants and Respondents.

## Opinion

**GOOD, J.**\*—Appellant petitioned the Superior Court of the City and County of San Francisco, under Code of Civil Procedure section 1094.5, for mandamus to review a decision by respondent California Unemployment Insurance Appeals Board (hereinafter "board") holding that appellant was discharged from his employment for misconduct under Unemployment Insurance Code section 1256 and was not entitled to unemployment benefits. The evidence adduced at the referee's hearing may be briefly summarized as follows:

At a time when appellant was being trained for new and unfamiliar work at his place of employment, he became nervous and frustrated and either "blew up" or felt he was "going to blow up." He left work without permission from anyone in authority in midafternoon before the end of the shift. He had been seeing a psychologist because of emotional problems and shortly after the incident in question was referred to a psychiatrist for out-patient psychotherapy. His employer's president and active manager of the shop, William Hints, was aware of the emotional problem and had given appellant extra consideration on that account. The following morning Hints spoke to appellant about the unauthorized departure. Upon being asked why he had left, appellant assumed a defensive attitude and said it was because he felt like leaving. Hints said that if appellant did it again he might as well not return. Appellant responded that he didn't "give a shit." The record is not entirely clear as to whether he added "about you or the job" (Hints' testimony) or merely uttered the quoted ·phrase without amplification (appellant's testimony). Whatever he said, he was told that if that was the way he felt he could leave then. He left. Hints testified he thought appellant had quit but that he would have fired appellant for his attitude and language that morning.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Appellant explained his outburst as resulting from aggravation, embarrassment and humiliation that the confrontation had occurred in front of his two fellow employees. Appellant considered that he had been fired, and applied for unemployment insurance benefits which were initially granted. His employer protested the grant, and the referee's hearing thereon resulted in a decision holding that appellant had been discharged for misconduct. The board adopted the referee's decision, denied benefits to appellant and relieved the employer's account of charges therefor.

The trial court denied appellant's petition. Its findings were: (a) the fact of employment; (b) that appellant left work about one-half hour before quitting time without authorization from or notification to his employer; (c) the confrontation between Hints and appellant in the presence of other employees and the statement "I don't give a shit about this job"; and (d) the employer's statement that if appellant felt that way he could leave, and appellant's departure. The conclusions of law were:

"1. The petitioner's failure to obtain permission prior to leaving work early on May 11, 1971 was a material breach of duty owed his employer for which petitioner showed no justification.

"2. Petitioner's utterance of an obscenity was, under the circumstances, a willful disregard of the employer's interest and constituted a substantial breach of a material duty owed by the petitioner to the employer.

"3. The petitioner was discharged for misconduct and is disqualified from receiving unemployment insurance benefits pursuant to section 1256 of the California Unemployment Insurance Code."

Appellant does not attack the findings but contends that, as a matter of law, the findings do not support the conclusion that he was fired for misconduct. For the reasons discussed below, this contention is correct.

It is generally agreed that where there is no substantial dispute as to the facts, the ultimate conclusion to be drawn therefrom is a question of law. (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 74, fn. 7 [64 Cal.Rptr. 785, 435 P.2d 553]; *San Diego T. & S. Bank* v. *San Diego* (1940) 16 Cal.2d 142, 153 [105 P.2d 94, 133 A.L.R. 416].) Thus, in *Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board* (1960) 178 Cal.App.2d 263 at page 274 [3 Cal.Rptr. 37] it is noted that "The determination whether an employee left his employment 'without good cause' is, in effect, the drawing of a legal conclusion from a set of facts." The record in the case before us contains no substantial or material conflict as to the facts. For reasons later discussed, the difference between appellant's version of the offending statement and his employer's amplified

version is not of legal consequence. Although the referee's decisions clearly predicates appellant's discharge upon misconduct by reason of said statement, the trial court's conclusions seem to predicate the misconduct causing the discharge upon both the unauthorized departure and the statement. We are therefore compelled to consider separately the two aspects of the conclusions.

A. Appellant's unauthorized departure:

At the outset, it must be noted that the Unemployment Insurance Act is remedial (Unemp. Ins. Code, § 100) and must be liberally construed to effectuate its purpose. (*Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board, supra,* 178 Cal.App.2d 263 at p. 270.) Since 1959, the construction of the term "misconduct," quoted in *Maywood Glass Co.* v. *Stewart* (1959) 170 Cal.App.2d 719 [339 P.2d 947] from the Wisconsin Supreme Court, wherein the state's statutory language is similar to California's, has been uniformly adhered to by the California courts. (Cf. *Jacobs* v. *California Unemployment Ins. Appeals Bd.* (1972) 25 Cal.App. 3d 1035, 1037 [102 Cal.Rptr. 364]; *Lacy* v. *Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1133 [95 Cal.Rptr. 566].) ▮ That construction is as follows: " '. . . the intended meaning of the term "misconduct," . . . is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.' " (*Maywood Glass Co.* v. *Stewart, supra,* 170 Cal.App.2d 719 at p. 724.)

▮ We need not decide whether appellant's unauthorized departure under the circumstances of record in the referee's hearing might have met the volitional, deliberate or wanton disregard of duty tests of the cases just cited for the reason that the evidence does not support a finding or conclusion that appellant was discharged for that departure. To the contrary, even Hints testified that appellant's language at the confrontation was the sole cause of his discharge. That the departure brought about the confrontation does not make it the cause of the discharge. The conclusion that the departure was misconduct causing the discharge being entirely

without support in the record, the judgment denying appellant's petition cannot be supported on that ground.

B. Appellant's statement at the confrontation:

The California cases above cited recognize that an employee's conduct may fully justify a discharge insofar as labor relations would be concerned and not disqualify the employee from unemployment insurance benefits for misconduct. (Cf. *Jacobs* v. *California Unemployment Ins. Appeals Bd.*, *supra*, 25 Cal.App.3d 1035 at p. 1037; *Maywood Glass Co.* v. *Stewart, supra*, 170 Cal.App.2d 719 at p. 724.) We find no California case squarely in point on facts involving a single instance of a heated exchange between employee and employer. However, cases from other jurisdictions furnish authority for the proposition that to result in a "misconduct" disqualification in an isolated instance of insolence, it must be shown that the employee's act (or statement) was a substantial breach of an employee's duties, deliberately performed or performed in willful and wanton disregard of those duties and of his employer's interests.

In *Johnson* v. *Brown* (La. App. 1961) 134 So.2d 388, the employee was discharged for making derogatory remarks about the company to his supervisor after his (the employee's) paycheck had been decreased for not reporting to work. Although it reversed the decision not to grant unemployment on other grounds (*id.* at pp. 390-391), the court said that such a single hotheaded incident cannot be considered the type of premeditated and seriously improper conduct which is sufficient to deny unemployment compensation benefits to an employee. (*Id.* at p. 389.) (See also *Ciufo* v. *Brown* (La.App. 1963) 148 So.2d 459, 460; *Turner* v. *Brown* (La.App. 1961) 134 So.2d 384, 387-388.)

Respondent relies on *Hayward* v. *Employment Security Commission* (Del. Super. 1971) 283 A.2d 485, 486-487. However, this decision does not support respondent's position because the employee had been warned earlier about his behavior, and the court specifically noted that "[T]his is not the case of a single, hotheaded, spontaneous outburst, . . ." (*Ibid.*)

Respondent also relies on *Johnson* v. *Tidewater Associated Oil Co.* (Cal. Unemp. Ins. Appeals Bd. Benefit Decision No. 5570 [1950]) where the use of vulgar, obscene language toward a supervisor during a trade dispute was held to constitute misconduct. However, subsequent to this decision, the California Unemployment Insurance Appeals Board has redefined "misconduct" in a manner more favorable to an employee's entitlement to unemployment benefits. In Precedent Decisions (1968) 1 P-B-3 5, 6, the appeals board, citing *Maywood Glass Co.* v.

*Stewart, supra,* 170 Cal.App.2d 719, and adopting its definition of "misconduct," further quotes the Wisconsin court: "If mere mistakes, errors in judgment . . . and similar minor peccadilloes must be considered to be within the term 'misconduct', and no such element as wantonness, culpability or wilfulness with wrongful intent or evil design is to be included as an essential element in order to constitute misconduct within the intended meaning of the term as used in the statute, then there will be defeated . . . the principal purpose and object under the act of alleviating the evils of unemployment by cushioning the shock of a lay-off, . . ." *(Boynton Cab Co.* v. *Neubeck* (1941) 237 Wis. 249 [296 N.W. 636, 640].)

Elaborating on the foregoing language, the appeals board emphasized the necessity for *culpability* or *fault* on the part of the discharged employee as a necessary element of misconduct, stating: "From this definition of misconduct and the emphasis on involuntary unemployment throughout section 100 of the code, it appears that 'fault' in this context does not include mere inability, poor judgment, inefficiency, inadvertence, or even 'ordinary negligence.' " (Precedent Decisions, *supra,* 1 P-B-3 7.)

Given the tests of fault and willful or wanton behavior as essential elements of "misconduct," the single instance of an offensive remark uttered in the circumstances disclosed in the instant record falls within the category of a mere mistake or error in judgment—a "minor peccadillo"—and is not misconduct disqualifying appellant from unemployment insurance benefits.

The judgment is accordingly reversed, and the trial court is directed to issue the writ directing the California Unemployment Insurance Appeals Board to set aside its decision and reinstate appellant's benefits.

Devine, P. J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under appointment by the Chairman of the Judicial Council.