Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania *v.* Ronald Bacon, Appellant.

Argued October 10, 1975, before Judges MENCER, ROGERS and BLATT, sitting as a panel of three. Reargued June 8, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER and BLATT. Judges KRAMER and ROGERS did not participate.

584

*Harry Lore,* with him *Cohen and Lore,* for appellant.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE BLATT, July 21, 1976:

This is an appeal from a decision and order of the Unemployment Compensation Board of Review (Board) denying benefits to Ronald Bacon (claimant), an electric welder who was discharged by his employer, Westinghouse Electric Corporation (Westinghouse) at Lester, Pennsylvania, in February 1974.

The claimant last worked on Friday, February 1, 1974. The following Monday he became sick with acute abdominal pain and reported to his family physician for treatment. His mother then advised Westinghouse that her son would be out of work for a couple of days due to the sickness. The claimant received continued treatments from his physician on February 9, 11, 15 and 18, 1974 and his physician indicated that he was physically able to return to work on February 20, 1974.

Between Monday, February 4, and Wednesday, February 20, the claimant had contacted his employer only once, on February 11, 1974, and then only to request accident and sickness insurance forms, not expressly indicating at that time that his continued

absence from work was as a result of his continuing sickness. Meanwhile, Westinghouse had apparently been expecting the claimant to return to work on February 6, and, when he failed to report that day, sent a company representative to visit his home. The visit was made on February 14, 1974, but no one was found at home. The next day Westinghouse sent a telegram informing the claimant that he was released from employment with the company "due to your absence for more than five days without satisfactory reason." The claimant asserts that he did not receive this telegram, and on February 20, 1974 he returned to work and was then informed of his release. He subsequently applied for benefits pursuant to the Unemployment Compensation Law[1] (Act), but benefits were finally denied as a result of the Board's determination that this claimant's unemployment resulted from his discharge from work for willful misconduct. Section 402(e) of the Act, 43 P.S. §802(e), of course, bars benefits under such circumstances.

Although willful misconduct has not been defined by the legislature, we have defined it to mean:

"an act of *wanton* or *willful* disregard of the employer's interest, a *deliberate* violation of the employer's rules, a *disregard* of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest *culpability, wrongful intent,* or *evil design,* or show an *intentional* and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." *MacFarlane v. Unemployment Compensation Board of Review,* 12 Pa. Commonwealth Ct. 550, 552, 317 A.2d 324, 325-326 (1974) (Emphasis in original.); *Kentucky Fried Chicken of*

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §751 et seq.

*Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973).

And, as we explained in *MacFarlane v. Unemployment Compensation Board of Review, supra,* 12 Pa. Commonwealth Ct. at 553, 317 A.2d at 326:

"In all these definitions there is an element indicating a consciousness of wrongdoing on the part of the employee. The use of such words as 'wanton or willful', 'deliberate', 'disregard', 'intentional', and 'negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design' indicates that an employee is only guilty of willful misconduct when he is, or should be, under the circumstances, conscious that his actions are inimical to the interests of his employer."

Moreover, our Supreme Court has recently stated that "[e]qually germane to the inquiry is a recognition that the issue is not whether the employer had the right to discharge for the questioned conduct of the employee, but rather whether the State is justified in reinforcing that decision by denying benefits under this Act for the complained of conduct." *Frumento v. Unemployment Compensation Board of Review,* —— Pa. ——, ——, 351 A.2d 631, 634 (1976). (Footnotes omitted.) Nor can we forget that the employer must carry the burden of proving the assertion that the discharged employee was guilty of willful misconduct. *Coulter v. Unemployment Compensation Board of Review,* 16 Pa. Commonwealth Ct. 462, 332 A.2d 876 (1975).

Although the circumstances of the instant claim present a very close case, we do not believe that Westinghouse has demonstrated a consciousness of wrongdoing on the part of the claimant here. First, Westinghouse calls attention to the rules of conduct for the Lester, Pennsylvania plant which state: "Employees

absent for one week or more without satisfactory reason will be released immediately." While the claimant here was obviously released in accordance with this policy, this rule actually sets no real standards of behavior or expectations of the employer which we could say that this claimant had consciously violated. There is nothing in the rules to indicate when notice is to be given, to whom it is to be given or how it is to be given, and Westinghouse, we believe, has failed to show that the claimant consciously disregarded any standard of behavior expected of him. The company also points to the employee's pass badge, on the reverse side of which are listed the telephone numbers that employees are to use to notify Westinghouse of their absences. These numbers were not used by the claimant either to inform Westinghouse of his absence after February 4, 1974 or when he requested sickness disability insurance forms on February 11, 1974. However, he apparently did properly notify Westinghouse of his sickness on February 4 and Westinghouse was then led to believe that his absence would be of two days duration only. Clearly the company had not been given satisfactory explanation of the claimant's extended absence, however, until after he returned to work on February 20, 1974. The claimant's conduct, while it is not praiseworthy, still fails to demonstrate that he was or should have been conscious of rule breaking on his part. He had informed Westinghouse that he would be out at least two days for sickness, he had visited a doctor regularly throughout his entire absence, he had requested company insurance forms and had them properly completed and returned to Westinghouse, and he had then returned to the plant physically able and apparently expecting to begin work, prepared at that time to provide a satisfactory reason for his entire absence. Had the claimant not attempted to inform Westinghouse of his sickness,

588

and then, upon return to work, if he had not offered satisfactory reasons for his absence, we would have no difficulty holding that his behavior amounted to willful misconduct. Here, however, we believe that Westinghouse has failed to sustain its burden of proving willful misconduct.

We, therefore, issue the following

ORDER

AND Now, this 21st day of July, 1976, the decision and order of the Unemployment Compensation Board of Review is hereby reversed and this case is remanded to the Board for the computation of benefits due the claimant, Ronald Bacon.