609 P.2d 1089

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Successor agency to the Employment Security Commission of Arizona, Appellant,**

v.

**MAGMA COPPER COMPANY, Appellee.**

**No. 1 CA–CIV 4059.**

Court of Appeals of Arizona,
Division 1,
Department A.

April 1, 1980.

**390**

Robert K. Corbin, Arizona Atty. Gen. by M. Francis Neville, Asst. Atty. Gen., Phoenix, for appellant.

Țwitty, Sievwright & Mills by Kenneth D. Nyman, Phoenix, for appellee.

## OPINION

DONOFRIO, Acting Presiding Judge.

This is an appeal by the Arizona Department of Economic Security (Department) from a Maricopa County Superior Court judgment in favor of the Magma Copper Company (Magma). The superior court reversed a decision of the Department that held Magma discharged the claimant/work-

er for a reason not warranting disqualification from unemployment insurance benefits.

The main issue of this appeal is whether the superior court may properly reverse an unemployment insurance benefit decision of the Department by making a finding that a "record of unexcused absences is misconduct" within the meaning of A.R.S. § 23–775(2), when the employer has presented no evidence as to the facts surrounding the absences other than that the employer considered them to be unexcused in accordance with its company rules.

A claimant has the burden of proving that he is eligible for unemployment benefits, *Employment Security Commission v. Doughty*, 13 Ariz.App. 494, 478 P.2d 109 (1970), however, when the employer is claiming disqualification of the claimant from benefits because of misconduct the Department has adopted a rule which places the burden upon the employer to prove this assertion.[1]

Mario Martinez, claimant, filed a claim for unemployment insurance benefits with the Department effective March 7, 1976, claiming he was discharged from employment on March 6, 1976. The employer, Magma, protested the payment on the basis that claimant was disqualified from receiving benefits. On April 19, 1976, a deputy of the Department determined that the claimant was entitled to benefits because he was discharged for a reason not warranting disqualification. The employer's account was accordingly charged for the benefits paid to claimant. Magma appealed to the Director and a hearing was held before the Department's appeals tribunal.

The tribunal rendered its decision affirming the determination of the deputy making the following findings and conclusions:

*FINDINGS OF FACT:*

The claimant was employed as a chute-blaster for the X Copper Company, San Manuel, Arizona, for approximately seven months until March 6, 1976, at which time

---

1. See A.C.R.R. R6–3–51190(B)(2)(b), which provides that when a discharge has been established the burden of proof rests on the employer to show that it was for disqualifying reasons.

he was discharged. The claimant's discharge resulted from an unexcused absence after having received prior warnings. The claimant had been experiencing pains in his back. He had previously gone to a medical doctor for this condition, however, had not realized any relief. On March 6, the claimant's back bothered him so much he was unable to take his boots off. He attempted to contact a chiropractor, however, could not reach anyone on Sunday, March 7. He called his employer on March 7 and informed him of his condition. On March 8, he went to a local chiropractic health clinic where he was attended to by a Doctor of Chiropractics. The employer's contention is that the claimant presented an invalid medical release for his absence of March 8, 1976, in that he was not attended by a licensed physician as described under their rules. The claimant had not read the personnel instruction booklet and was not aware that chiropractors would not be considered as acceptable licensed doctors. Chiropractors have to be licensed by the State of Arizona in order to operate in this state.

*REASONING AND CONCLUSIONS OF LAW:*

The employer has contested a determination that the claimant was discharged for a reason not warranting disqualification. The issues raised must be decided under Section 23–775, Paragraph 2, and Section 23–727 of the Employment Security Law of Arizona (Copy Attached).

The Department's Benefit Policy Rules provide in pertinent part:

> Absences due to causes beyond the control of the claimant are generally regarded as falling short of misconduct; however failure to give notice of such absence may constitute misconduct. The absence itself, based on illness, accident, unavoidable delay in transportation, urgent domestic responsibilities

and the like, is not considered misconduct. . . .

\*    \*    \*    \*    \*    \*

> When a claimant gives no excuse for his absence or is absent for an obviously capricious reason, and is discharged for such absence, his discharge is held to be for misconduct connected with his work.

The Tribunal finds the claimant credible and believes that what he said occurred did, in fact, happen. We feel that the claimant sincerely believes he was giving his employer proper notice of his absence and supplying the employer with a proper substantiating medical release. The Tribunal does not feel that evidence has been established that the claimant was discharged for work-connected misconduct. We, therefore, find that his discharge does not warrant disqualification.

The decision of the Department was made final and Magma took judicial review to the superior court under A.R.S. § 12–901, *et seq.* A certified copy of the record of the proceedings before the Department was transmitted to the trial court. The parties submitted the matter to the trial judge on the record.

The superior court's first ruling held that the decision of the Department was legally unsupportable because claimant was discharged for his fifth unexcused absence within a six-month period, and because the last absence did not have a proper medical release from a licensed physician. The superior court vacated its initial judgment and upon reconsideration held that claimant's record of the unexcused absences was misconduct although the last absence may not have been.[2]

We must first determine whether the facts as found by the Department constitute misconduct within the meaning of A.R.S. § 23–775(2). The parties have not taken issue with the findings of fact and therefore our focus is limited to whether

2. The final judgment of the superior court reads:
> The Court finds that the record of unexcused absences is misconduct though the last one may not be.

IT IS THEREFORE ORDERED reversing the decision of the department, and it is further ORDERED, ADJUDGED AND DECREED that Plaintiff's account is not to be charged for benefits to be paid to Claimant.

the superior court was correct in its interpretation of the law. In this situation we are free to draw our own legal conclusions in determining whether the Department or the superior court erred in its interpretation of the law. *Eshelman v. Blubaum*, 114 Ariz. 376, 560 P.2d 1283 (App.1977). We hold that under the facts as determined by the Department, claimant's actions did not amount to misconduct as a matter of law.

Magma takes the position that claimant had five unexcused absences within a six-month period and that pursuant to the rules of the company[3] he was discharged after the fifth of these. Magma argues that the statute [§ 23–775(2)] speaks of negligent or wilful misconduct, and that because of claimant's own negligent violation of the company's rules he was terminated from employment. That while claimant's last absence may not have been a major infraction, five unexcused absences together were a total disregard of the employer's interest and constituted misconduct.

■ The Department's position is that based upon the facts as it found, the claimant's discharge was not due to any wilful or negligent misconduct connected with his work as those terms are defined by law. The Department's position can be stated as follows: (1) That the evidence supports the findings that claimant had not read the company's personnel instruction booklet and was not aware that chiropractors would not be considered acceptable doctors in the matter; (2) because the claimant did not intend to be "voluntarily" absent his absence was not disqualifying because it was not "wilful or negligent misconduct connected with his work," and (3) that the trial court exceeded

its permissible scope of judicial review in the matter by holding as a matter of law that the absences disqualified claimant. We agree.

The pertinent parts of A.R.S. § 23–775 and § 23–727 which govern the issues herein provided:

§ 23–775. Disqualification from benefits

An individual shall be disqualified for benefits:

\*   \*   \*   \*   \*   \*

2. For the ten consecutive weeks immediately subsequent to first filing a valid claim after he has been discharged for wilful or negligent misconduct connected with his work, if so found by the department, and in addition his maximum benefit amount shall be reduced by an amount equivalent to eight times his weekly benefit amount.

A.R.S. § 23–727(D) provides:

D. Benefits paid to an individual whose separation from work with any employer occurs under conditions found by the commission to be within the provisions of paragraph 1 or 2 of § 23–775, or for compelling personal reasons not attributable to the employer and not warranting disqualification for benefits, shall not be used as a factor in determining the future contribution rate of the employer from whose employment the individual so separated, but the employer shall establish the condition of such separation to the satisfaction of the commission by submitting such information as the commission requires within ten days after the date of notification or mailing of notice by the commission that the individual has first filed a claim for benefits. ·

3. *COMPANY RULES:*

5.4 Absences from Work

\*   \*   \*   \*   \*   \*

If you must miss work due to illness or a non-occupational injury, call the Control Center (385–2321) as soon as possible.

When you return to work, you must give your supervisor a release from a licensed physician   .   .   . .

\*   \*   \*   \*   \*   \*

b. 1. Two unexcused absences in a calendar six-month period shall result in verbal reprimands given by the immediate supervisor.

2. One additional unexcused absence in a calendar six-month period shall result in a written warning given by the immediate supervisor.

3. One additional unexcused absence in the same calendar six-month period following the issuance of the written warning shall result in a FINAL WRITTEN WARNING given by the Division Head.

4. One additional unexcused absence within six months following the date of issuance of the final written warning shall subject the employee to DISCHARGE.

Since the phrase "misconduct connected with his work" is nowhere defined in the Employment Security Act, we must determine the meaning the Legislature intended to attach to those words.

The intent of the Act and of the aforementioned pertinent provisions can be found in the Legislature's declaration of policy articulated in A.R.S. § 23–601. This statute makes it clear that a purpose of the act is to prevent the spread, and lighten burden of, involuntary unemployment which is a serious menace to our State. That a method of achieving this is by a systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment. Of particular importance is the last sentence of the statute which reads:

The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through *no fault of their own.* (Emphasis supplied).

From the policy set forth in § 23–601 it is clear that the phrase contemplates an act by the employee which would make the fact of his unemployment voluntary, or at any rate the result of some *fault of his own* before being disqualified from benefits.

We are unable to see where claimant can be faulted for his illness and find the evidence reasonably supports the Department's ruling that claimant thought he was complying with company requirements when he went to a chiropractor for his illness and therefore was not guilty of misconduct.

In *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941), the Wisconsin Supreme Court defined misconduct in the context of unemployment insurance matters:

[T]he intended meaning of the term "misconduct" . . . is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute. *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636, 640 (1941).

This court approved the basic principles of this definition in *Employment Security Commission v. Myers*, 17 Ariz.App. 87, 495 P.2d 857 (1972). The definition adopted by the Department under its rule-making powers in its rule A.C.R.R. R6–3–5105(A)(1)[4] is consistent with these cases.

---

4.  A.C.R.R. R6–3–5105.A.1.
    1. Definition of "Misconduct"
    a. "Misconduct connected with the work" may be defined as an act or omission by the worker which constitutes a material breach of duties and obligations arising out of the contract of employment, or an act or course of conduct, in violation of the employee's duties, which is tantamount to a disregard of the employer's interests.
    b. American Jurisprudence defines "Misconduct Precluding Payment of Unemployment Insurance" as follows: "misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer."

■ We agree with the court in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941), that disqualification for misconduct is in the nature of a forfeiture or penalty provision and should be narrowly construed. Unemployment benefits accrue to all covered workers who are "eligible" under A.R.S. § 23–771. However, payment of these benefits is barred or limited under A.R.S. § 23–775(1) and (2) for persons whose employment is terminated voluntarily or due to their own fault. The payment of benefits to such persons may not be used as a factor in determining their employer's future contribution rate.

In light of the provisions of the Act and the definition as set out in Rule R6–3–5105(A)(1), supra, we are unable to see where the misconduct reflected in the record was an act of negligent wanton or wilful disregard of the employer's interest. Nor are we able to see where claimant's conduct as to the fifth or last absence was a deliberate violation of the rules or a disregard of standards of behavior which the employer has the right to expect of his employee, or that it is negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer as set out in the American Jurisprudence definition. By enumerating a portion of the definition in the rule we do not mean to imply that any or all of these elements must exist before a worker is disqualified. To disqualify a claimant from benefits it must be established that he committed an act or acts of misconduct and that he was discharged for such misconduct.

■ The evidence introduced regarding the reasons for claimant's discharge is very brief. It gives information as to the dates of the absences and the fact that the employer considers them unexcused. Magma's witness was unable to provide insight as to the reason for claimant's prior absences. Claimant recalled one absence was due to his daughter's illness which would not constitute misconduct unless the employee failed to give the required notice. See A.C. R.R. R6–3–5115(D)(1) and (2). At any rate, the Department has concluded that Magma did not meet its burden of proof as to the grounds for disqualification.

■ We also note that claimant was discharged because of his five unexcused absences within six months which constituted a violation of company rules. While this could be sufficient basis to discharge claimant insofar as labor relations and perhaps other things are concerned, it is insufficient as a matter of law for disqualification from unemployment insurance benefits. *Cf. Silva v. Nelson*, 106 Cal.Rptr. 908, 31 Cal. App.3d 136 (1973); *Unemployment Comp. Board of Review v. Bacon*, 25 Pa.Cmwlth. 583, 361 A.2d 505 (1976).

For the reasons we have discussed, we hold the superior court was clearly in error in reversing the decision of the Arizona Department of Economic Security. The judgment of the superior court is reversed and the final administrative decision of the Department of Economic Security is affirmed.

Reversed and remanded for entry of judgment and other proceedings not inconsistent with this opinion.

MOELLER,* J., concurs.

WREN, Judge, dissenting.

I must respectfully dissent. The record is clear that during the course of his seven month employment the claimant received two warnings for absenteeism. The first of these warnings cited three unexcused absences and the second recited the company rule that "one additional unexcused absence within six months following the date of this warning will result in your discharge." Claimant admits signing both the warning notices. He then breached another company rule by not having a *licensed physician's* excuse; and, as a result, was terminated for having five unexcused absences. It is thus

---

* NOTE: The Honorable James Moeller, Judge of the Superior Court of Maricopa County, participated in this decision as authorized by order of the Supreme Court of the State of Arizona filed January 22, 1979.

clear, as determined by the trial court, that claimant had engaged in a "course of conduct" of absenteeism in violation of company rules, rather than just a "technical breach" by reason of the last absence alone.

The majority opinion concludes that since Magma presented no evidence as to the facts surrounding the prior absences, other than that they were considered to be unexcused, it had not met its burden of proving any misconduct as to them. This finding misses the point. Claimant does not contend that his previous absences were "excused". The reasons for the absences, i. e., whether illness of the family or otherwise, has no bearing on whether the absences were, in fact, "unexcused" as applied to Company Rule 5.4, set forth in the majority opinion.

The opinion is also bottomed on the fact that claimant had not read the Magma Rules Booklet and was therefore not aware that chiropractors were not acceptable as verification for an excused absence. Therefore, the decision continues, the last absence could not constitute the requisite "willful or negligent misconduct connected with his work within the meaning of § 23–775." I submit that such a determination flies in the face of the Arizona Department of Economic Security's Benefit Policy Rule ACCR–R6–3–51485A that:

> "an employee, discharged for violating a company rule, generally is considered discharged for misconduct connected with the work. This principle is based on the theory that when hired, an employee agrees to abide by the rules of his employer  .   .  .. In order for misconduct connected with the work to be found it must be determined that the claimant knew or *should have known* of the rule and that the rule is reasonable and uniformly enforced." (emphasis supplied.)

I would therefore ask this question: Can an employee now escape disqualification from benefits for non-compliance with his employer's work rules by merely stating that he has not read them, and that therefore a violation could not be deemed willful.

Moreover, in my opinion, whether or not the last absence from work constituted misconduct is irrelevant. Under Benefit Policy Rule ACRR–R6–3–5105A.1, as noted in footnote three of the opinion, a *course of conduct* in violation of an employee's duties, which is tantamount to a disregard of the employer's interest, is misconduct; and that is precisely what the superior court determined when it referred to the "record of unexcused absences." Clearly, a record of absenteeism may constitute willful misconduct disqualifying a claimant for unemployment benefits under A.R.S. § 23–775(2). *See* 58 A.L.R.3d § 3, Unemployment Compensation Absenteeism, 76 Am.Jur.2d § 58, Unemployment Compensation. In my opinion the decision of the Department which referenced only the last incident, was arbitrary and capricious as a matter of law.

I would affirm the judgment of the trial court.