624 P.2d 318

Elaine NUNN, Plaintiff-Appellant,

v.

The **ARIZONA DEPARTMENT OF ECONOMIC SECURITY**, an agency; and **Uniservice, Inc.**, c/o Greater Arizona Savings and Loan Association, Defendants-Appellees.

No. 1 CA–UB 059.

Court of Appeals of Arizona, Division 1, Department C.

Nov. 13, 1980.

Rehearing Denied Feb. 11, 1981.

Review Denied March 3, 1981.

Carson, Messinger, Elliott, Laughlin & Ragan, by Richard H. Elliott, Evan R. Laughlin, Phoenix, for plaintiff-appellant.

Robert K. Corbin, Arizona Atty. Gen. by James A. Tucker, Asst. Atty. Gen., Phoenix, for defendant-appellee Arizona Department of Economic Security.

Ridenour, Swenson & Cleere by James W. Evans, Phoenix, for defendant-appellee Greater Arizona Savings and Loan Ass'n.

## OPINION

OGG, Chief Judge.

Appellant brings this appeal to challenge a determination by the unemployment insurance appeals board of the Arizona Department of Economic Security that she was not entitled to unemployment benefits because she was discharged from employment for misconduct connected with her work. The parties have not taken issue with the findings of fact and therefore our focus is limited to whether the appeals board was correct in its interpretation of the law. We hold that under the facts as determined by the appeals board, claimant's actions did amount to misconduct as a matter of law.

Appellant filed a claim for unemployment insurance benefits. On September 28, 1979, a deputy determined that the appellant was not eligible for benefits under the provisions of A.R.S. § 23–775(2) because she was discharged for misconduct. Appellant appealed the deputy's determination to an appeal tribunal of the Arizona Department of Economic Security, and a hearing was held. The tribunal rendered its decision affirming the determination of the deputy.

The tribunal in its findings of fact found that appellant Elaine Nunn was discharged on September 5, 1979 from her employment with Greater Arizona Savings and Loan Association. Two days before her discharge she had been promoted to the position of savings supervisor. For several months, appellant had shared the duty of maintaining the cash reserve fund of the office where she worked. She would take a check for a specified amount to a bank, cash the check, return to the office, make a complete count of the monies received from the bank, and place the money in the vault where the reserve cash fund was maintained.

On September 5, 1979, appellant took a check to a bank and received payment for the check in the amount of $3,550. She returned to the office with the money and placed it in one of the three limited access booths used by patrons to examine the contents of their safety deposit boxes. In accordance with her past practice, she left the money to put away her purse, expecting to return immediately to count the money. The telephone rang while the appellant was putting away her purse. The appellant answered the phone when she saw her subordinate was occupied with a customer. The call was from an irate customer, and the appellant forgot about the money. Subsequently she engaged in transacting business with other customers, including admitting three customers to the booths to examine the contents of their safety deposit boxes. Approximately 30 to 40 minutes after she had left the booth, the claimant returned to check on the money. The money was gone, and after an investigation, the claimant was discharged from employment.

The tribunal further found that the appellant knew she was not to leave money unattended. On the other hand, she knew of the requirement of immediately answering telephone calls. The appellant was also under the pressure of operating a savings department that was understaffed.

The tribunal made the following conclusions of law:

Arizona Administrative Rules provide in Rule R6–3–51300:

A.1. . . . Misconduct generally arises when a worker knowingly fails to exercise ordinary care in the performance of his duties.

A.2. Ordinary care means that degree of care which persons of ordinary prudence are accustomed to exercise under the same or similar circumstances, having due regard to his or other's rights and safety and to the objectives of the employer.

\* \* \* \* \* \*

The claimant contends that the loss occurred while she was following procedures and standards approved by the employer. The Tribunal does not accept this contention.... The degree of [the claimant's] negligence must be determined by viewing [her] awareness of her responsibility for the safety of the money and her reactions to another duty (answering the telephone and attempting to satisfy an irate customer). At some point in this transition of attention the claimant must have been aware that she was gambling with the safety of the money, a gamble not necessary or logical even in view of the employer's contribution through providing the ideal climate for the loss. The Tribunal concludes the claimant's failure to place the responsibility of not leaving money unattended above the responsibility for appeasement of an irate customer was a failure to exercise ordinary care.

Appellant timely appealed her case to the unemployment insurance appeals board. The board in its decision entered on March 3, 1980 affirmed the decision of the appeal tribunal. Appellant then filed her notice of appeal bringing the matter before this court.

A.R.S. § 23–775 in part provides:

An individual shall be disqualified for benefits:

\* \* \* \* \* \*

2. For the ten consecutive weeks immediately subsequent to first filing a valid claim after he has been discharged for wilful or negligent misconduct connected with his work, if so found by the department, and in addition his maximum benefit amount shall be reduced by an amount equivalent to eight times his weekly benefit amount.

The question of in what circumstances a single act of negligence can constitute "negligent misconduct" is one of first impression in this court.

In *Employment Security Commission v. Myers*, 17 Ariz.App. 87, 495 P.2d 857 (1972), this court found that an employee's acts were sufficient to constitute a finding of "misconduct" where he had been informed of the requirement that he must wear a hard hat but had refused to do so. The court defined misconduct as "an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee." *Id.* 17 Ariz. App. at 89, 495 P.2d at 859, citing 48 Am. Jur. at 541.

In *Arizona Dept. of Economic Sec. v. Magma Copper*, 125 Ariz. 389, 609 P.2d 1089 (1980), an employee was discharged because of an unexcused absence after receiving several prior warnings. The tribunal found that the claimant sincerely believed he was giving his employer a proper notice of his absence, and granted unemployment benefits. This court affirmed the decision of the tribunal and in dicta cited the widely used definition of "misconduct" enunciated in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941):

[T]he intended meaning of the term "misconduct" ... is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

*Magma Copper, supra,* at 393, 609 P.2d at 1093.

Appellant argues that her conduct does not evidence negligence of such a degree or

recurrence as to manifest wrongful intent or evil design or to show an intentional or substantial disregard of the employer's interests. This court, however, is not limited to the strict definition of misconduct enunciated by the Wisconsin court in *Boynton.*

In 1979 the Arizona legislature enacted legislation defining "misconduct". A.R.S. § 23–619.01 A states:

A. "Misconduct connected with the employment" means any act or omission by an employee which constitutes a material or substantial breach of the employee's duties or obligations pursuant to the employment or contract of employment or which adversely affects a material or substantial interest of the employer.

A.R.S. § 23–619.01 B cites eight examples of what constitutes "wilful or negligent misconduct". Number 7 applies in this case:

B. "Wilful or negligent misconduct connected with the employment" includes, but under no circumstances is limited to, the following:

\* \* \* \* \* \*

7. Violation without good cause of any rule of conduct, safety rule or other rule in any way related to the employment which is reasonably imposed and communicated by the employer or which can be reasonably implied from the type of employment.

In light of the definition of misconduct set out in A.R.S. § 23–619.01, we find that the appellant's conduct was a substantial violation without good cause of an employer's rule of conduct. In reaching this conclusion, this court considered the worker's knowledge of her duty, the materiality of the duty, and the materiality of the breach.[1]

Ms. Nunn was aware of the bank's rule that money was not to be left unattended. She was a savings supervisor. Although she had only held this position for two days, she was the person in her department primarily responsible for seeing that the bank's procedures were followed. The breach of Ms. Nunn's duty was substantial. The appellant's conduct may be viewed as continuing negligence. We agree with the appeals board that at some point during the appellant's conversation with the irate customer, she must have been aware that she was gambling with the safety of the money, a gamble that the appeals board did not find necessary or logical. Not only did Ms. Nunn leave the money unattended for a few minutes, she forgot that the money was in the safety deposit booth for 30 to 40 minutes. Before remembering the money, she permitted 3 customers to enter the booths. Also, the consequences of the appellant's action cannot be ignored; the bank lost $3,550.

Appellant relies on the cases of *Delgado v. California Unemployment Ins. Appeals Bd.,* 41 Cal.App.3d 788, 116 Cal.Rptr. 497 (1974), and *Eastex Packaging Co. v. Department of Industry, Labor and Human Relations,* 89 Wis.2d 739, 279 N.W.2d 248 (1979). In these cases the courts found that the employees' actions did not equal *misconduct* because there was evidence the employees believed that the practices were acceptable to their employers, and that they were promoting the employers' interest. The facts in the present case are distinguishable. While there is some evidence in the record to indicate that it was an accepted practice

---

1. A.C.R.R. R6–3–5105 A. in part provides:

2. A claimant need not have actually acted with intent to wrong his employer to result in a finding of misconduct connected with the work. Misconduct may be established if there is indifference to and neglect of the duties required of the worker by the contract of employment, or a violation of any material lawful duty required under the employment contract when such duty is expressed or impliedly set forth to the worker and the facts show that the worker should have reasonably been able to avoid the situation which brought about his discharge.

3. In determining whether the worker would be expected to have avoided the situation which caused the discharge consideration should be given to the worker's knowledge of his responsibilities through past experience, explanations, warnings, etc. The materiality of a duty and the materiality of the breach of such duty should be evaluated in the light of what is customary in the type of business in which the claimant was employed.

to leave money briefly unattended to put away a purse or to answer the phone when other employees were busy, there is no evidence that leaving money unattended for 30 to 40 minutes was an accepted practice or that leaving the money unattended for such an extended period of time was done in furtherance of the employer's interest.

For the reasons stated above, the decision of the appeals board is affirmed.

DONOFRIO and O'CONNOR, JJ., concur.