CLEONA KIRK

*v.*

PHYLLIS J. COLE, CLERK, etc., *et al.*

(No. 15373)

Decided March 12, 1982.

*Samuel Carter Zerbe, Christine M. Hedges,* for petitioner.

*Steptoe and Johnson, C. David Morrison* and *Robert M. Steptoe, Jr.,* for respondents.

NEELY, JUSTICE:

This is an appeal by way of certiorari[1] from a final order of the Circuit Court of Kanawha County which affirmed the decision of the Board of Review of the West Virginia Department of Employment Security disqualifying the appellant, Cleona Kirk, from receiving unemployment compensation benefits for a six-week period because she was discharged from her place of employment for misconduct. The appellant contends that absence from work due to illness does not constitute misconduct within the meaning of *W. Va. Code*, 21A-6-3(2) [1981]. We agree and reverse the decision of the circuit court.

The facts of the case show that the appellant began working for Eagle Convex Glass Specialty Company in Clarksburg in 1973. She held the position of "glass polisher" for approximately five years when, at her own request, she was transferred to the glass cleaning unit. After six to seven months in her new capacity, the appellant asked to be returned to her former position of polisher because the constant standing in her new position was causing her pain in her back and legs.

Although there were no polishing position open at the time the appellant requested her transfer back to that unit, she received her transfer approximately four to five months later. The transfer was not only in response to the appellant's request, but also in response to a statement from her physician that she should work in a sitting position whenever possible. In the polishing position, the worker was allowed to sit a majority of the time.[2]

In July of 1977, Eagle Convex instituted an "Absence Control Program" applicable to all its employees. This policy provided for progressive disciplinary measures to control excessive absenteeism. These measures included

---

[1] *W. Va. Code*, 21A-7-27 [1970], provides that in employment compensation cases an appeal from a decision of the Circuit Court of Kanawha County may be taken to this Court by petition for writ of certiorari.

[2] After her transfer back to polisher, the appellant worked approximately two months before her termination and was absent three days due to illness.

counseling, suspension and finally, termination. The appellant was disciplined under this program several times and there is no doubt from the record before us that she was absent a considerable number of days from the time she began work. When the various disciplinary measures failed to improve the appellant's work record, she was terminated on 18 July 1980. The cause of the termination was listed as "excessive absenteeism."

On 20 August 1980 the appellant filed a claim for unemployment compensation benefits. The Deputy rendered a decision on 25 August 1980 finding that the appellant was eligible to receive benefits, but due to the fact that she was discharged from her employment for misconduct, she was disqualified form receiving them for the six-week period of 13 July 1980 to 30 August 1980.

The appellant appealed the Deputy's decision and an evidentiary hearing was held. Following the hearing, the trial examiner affirmed the Deputy's decision that the appellant was disqualified for benefits for the six-week period in question, but in addition found that the appellant was ineligible for benefits indefinitely "for the reason that she is not able to work, not available for full-time work for which fitted by prior training or experience." By order dated 12 March 1981 the Board of Review set aside the decision of the trial examiner and reinstated the Deputy's decision that held the appellant eligible for benefits but disqualified for a six-week period.

The appellant appealed to the Circuit Court of Kanawha County and by order dated 14 August 1981, the court affirmed the decision of the Board of Review. In its opinion, the court said:

> The evidence is clear that the claimant had a long record of absenteeism. True this was probably due to ill health, but this was no fault of the employer who is entitled to a regular work record of an employee. "Misconduct" may be a misnomer, but this is the only category under the West Virginia Unemployment Compensation Law which the claimant's employment termination could fall. Certainly the employer should not be

penalized because of the claimant's health. The only other alternative would be to hold, as the trial examiner did, that termination was because she was unable to work. This, of course, would render the claimant ineligible.

Following the entry of the lower court's decision affirming her disqualification, the appellant filed this appeal.

## I.

We begin with the proposition that the purpose of the Unemployment Compensation Law is to "provide reasonable and effective means for the promotion of social and economic security by reducing as far as practicable the hazards of unemployment." *W. Va. Code,* 21A-1-1 [1978].

And it is well settled that the Act should be liberally construed in order to further its remedial purpose. *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954).

> The liability to pay and the right to receive unemployment compensation benefits rests upon the Unemployment Compensation Act. And such Act, being remedial in nature, its beneficent provisions should be liberally applied. *Bennett v. Hix,* 139 W.Va. 75 at 83, 79 S.E.2d 114 at 118 (1953).

*Also see, London v. Board of Review,* 161 W.Va. 575, 244 S.E.2d 331 (1978) and the cases cited in that opinion.

The claimant was disqualified from receiving benefits for the six-week period in question by virtue of *W. Va. Code,* 21A-6-3(2) [1981]. The applicable portion of that statute provides:

> Upon the determination of the facts by the commissioner, an individual shall be disqualified for benefits:
>
> . . . .
>
> (2) For the week in which he was discharged from his most recent work for misconduct and the six weeks immediately following such week; or for the week in which he was discharged from his last thirty-day employing unit for misconduct and the six weeks immediately following such week. Such

disqualification shall carry a reduction in the maximum benefit amount equal to six times the individual's weekly benefit.

The only issue before us in this case is whether the claimant's many absences from work, which were primarily due to illness, constitute misconduct within the meaning of the statute so that the circuit court was correct in disqualifying her from receiving benefits from 13 July 1980 to 30 August 1980.

## II

This Court has not previously had occasion to consider the meaning of the term "misconduct" as it is used in the unemployment compensation statute. However, in jurisdictions that have been faced with the question a general definition of misconduct has evolved. As stated in *Carter v. Michigan Employment Security Commission*, 364 Mich. 538, 111 N.W.2d 817 (1961), misconduct is:

> conduct evincing such willful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards or behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute.

*Accord*: *Arizona Department of Economic Security v. Magma Cooper Company*, 125 Ariz. 389, 609 P.2d 1089 (1980); *Fredericks v. Florida Department of Commerce*, Fla. Dist. Ct. App., 323 So.2d 286 (1975); *Beaunit Mills v. Board of Review*, 43 N.J. Super. 172, 128 A.2d 20 (1956); *Scevers v. Employment Division*, 26 Or. App. 659, 554 P.2d

575 (1976); *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 351 A.2d 631 (1976); *Boynton Cab Company v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941).

Most courts have held that persistent or chronic absences, at least where the absences are without excuse or notice, and the employee has been given warnings by the employer, constitute misconduct within the meaning of the unemployment compensation laws. *See, e.g., Broadway & Fourth Avenue Realty Co. v. Crabtree,* 365 S.W.2d 313 (Ky. 1962); *Banks v. Administrator of Department of Employment Security,* La. App., 384 So.2d 485 (1980); *Note,* 41 A.L.R.2d 1158 (1955). When the absence is due to a *genuine* illness however, many courts adhere to the general rule that the absences do not constitute misconduct and will not disqualify an employee from receiving unemployment compensation benefits. *See, Arizona Dept. of Economic Security v. Magma Copper Co.,* 125 Ariz. 389, 609 P.2d 1089 (1980); *Lacombe v. Sharp,* La. App., 99 So.2d 387 (1957); *Schultz v. Herman's Furniture, Inc.,* 52 Ohio App. 2d 161, 368 N.E.2d 1269 (1976); *Cook v. Commonwealth,* 42 Pa. Cmwlth. 448, 401 A.2d 8 (1979).

Obviously, when an employee is absent due to illness but fails to give proper notice the absence can amount to misconduct, not because of the illness *per se* but because the employee has an obligation to the employer to mitigate any damages an illness may cause the enterprise by giving appropriate notice. *Thompson v. Hygrade Food Products Corp..* 137 Ind.App. 591, 210 N.E.2d 388 (1965); *Gardner v. Unemployment Compensation Board of Review,* 29 Pa. Cmwlth. 548, 372 A.2d 38 (1977). *See also, Annot.,* 58 A.L.R. 3d 674 (1974).

We shall adhere to a rule that is in consonance with both the statute's exact language and its humanitarian intent. Absence from work due to illness does not *in itself* constitute misconduct within the meaning of *W. Va. Code,* 21A-6-3(2) [1981]. We are unable to see how the moral blame associated with "misconduct" can attach to an employee because of illness alone. In this regard, however, we would point out that genuine illness is a far different question than classic malingering. Where an

employer has reasonable rules and regulations governing notice and verification of illness, these rules must be followed, or failure to follow such rules can constitute "misconduct."

The respondents assert that the appellant was absent many days when she was not ill. The record indicates that when illness was not reported as the reason for the appellant's absence, the attendance records generally showed that no reason was recorded. There are no allegations that the appellant failed to report her absences in a proper manner nor that her illnesses were not genuine. In fact, the hearing examiner found that she was suffering from back trouble, arthritis of the spine, gastro-intestinal problems and hypertension. The circuit court also found that the appellant's absences were "probably due to ill health." Under these circumstances, we cannot find any misconduct on the part of the appellant.

For the foregoing reasons, the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded with directions to enter judgment for appellant.

*Reversed and remanded.*