727 P.2d 845

**Robert C. ANDERSON, Appellant,**

**v.**

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an agency,**

**and**

**Motorola, Inc., Appellees.**

**No. 1 CA–UB 462.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 23, 1986.

Tod F. Schleier, Phoenix, for appellant.

Robert K. Corbin, Atty. Gen. by Frank Sagarino, Asst. Atty. Gen., Phoenix, for appellee Arizona Dept. of Economic Sec.

Streich, Lang, Weeks & Cardon by Lawrence Allen Katz, Joseph T. Clees, Phoenix, for appellee Motorola, Inc.

## OPINION

FROEB, Chief Judge.

This appeal is from a decision of the Unemployment Insurance Appeals Board which held that appellant was discharged for misconduct in connection with employment and that appellant was disqualified from the receipt of unemployment compensation benefits. The issue on appeal is whether the appeals board correctly defined "misconduct" under current Arizona unemployment compensation law. We hold that it did and affirm the decision of the appeals board.

## FACTS

Appellant, Robert C. Anderson, was employed at Motorola, Inc. from January 1974, until he was terminated from employment on October 5, 1984. His last position with Motorola was as a Facility Staff Engineer. Appellant was Project Manager of the Effluent Control Project, which involved the disposal of toxic wastes. The project was undertaken in response to directives from the Environmental Protection Agency. To meet the legally committed deadline, Motorola had to deviate from standard company procedures. Cost overruns developed from the outset of the project. As Project Manager, appellant had regular contact with the outside contractors and consultants employed to design and build the project. Throughout the project, appellant and his supervisor, Earl Krueger, held meetings with the outside contractors and consultants to discuss the project's progress, which included discussion of financial matters.

At the project's completion, Krueger began to hold meetings with the outside contractors and consultants to determine the nature and the extent of the cost overruns. Appellant was excluded from those meetings. Appellant questioned Krueger about the meetings held without his presence and as a result, three meetings were held with appellant, Krueger, and upper management. In those meetings, it became apparent that upper management was displeased about the cost overruns involved with the project.

In an admitted attempt to head off disciplinary action against himself, appellant sent a memorandum to internal Motorola personnel with copies to the outside contractors and consultants involved with the project. The memorandum dated August 22, 1984, stated in part:

> We are wrapping up a very difficult job that has been accomplished in a minimum time frame by deviating from standard Motorola procedures with Motorola Managements [sic] approval and knowledge.

\* \* \* \* \* \*

Throughout the project, significant confussion [sic], conflicting information, and project control problems have resulted from Consultants and Contractors receiving direction from my Management or being asked to review project status with my management without my knowledge or requested presence.

As the assigned Project Champion, my control has been significantly diminished and hampered by my managements [sic] unprofessional approach to project management.

On August 27, 1984, appellant wrote a second memorandum, also with copies to the outside contractors and consultants, in which he requested a project audit. This memorandum also mentioned the significant deviations from standard Motorola procedure and asked for an investigation into why the cost overruns had developed.

On August 29, 1984, appellant was placed on a forced leave of absence with pay. He was eventually terminated from employment on October 5, 1984, for misconduct resulting from disloyalty and insubordination.

On November 2, 1984, appellant was denied unemployment compensation based on a Department of Economic Security (DES) deputy's ruling that the separation was the result of disloyalty and insubordination of the employer's interest. Appellant appealed that determination in a timely manner on November 8, 1984. On December 21, 1984, the Appeal Tribunal, after hearing testimony from appellant and Krueger, reversed the original determination and granted appellant unemployment compensation.

Motorola and the DES filed a timely petition for review with the Unemployment Appeals Board on January 9, 1985. On March 6, 1985, the appeals board reversed the Appeals Tribunal, denying appellant unemployment compensation. Appellant filed a timely request for review on April 10, 1985, after being granted an extension on March 27, 1985. The Unemployment Insurance Appeals Board affirmed the previous appeals board decision on May 9, 1985. This appeal followed.

On appeal, appellant argues that sending the memoranda to the outside parties was at most a good-faith error in judgment, and that he was trying to solve problems rather than to cause them. Furthermore, appellant contends that his actions did not rise to the level of seriousness required by Arizona unemployment compensation law for a finding of misconduct. Motorola counters that the company was embarrassed and that its reputation was damaged by the memoranda. More importantly, Motorola argues that appellant's actions were sufficient to constitute misconduct under the current administrative regulations.

## "MISCONDUCT" UNDER ARIZONA UNEMPLOYMENT SECURITY LAW

Appellant's fundamental argument is that in writing the memoranda, his actions did not reach the level of misconduct required by Arizona law for disqualification from benefits. He contends that the Arizona courts adopted the definition of misconduct advanced in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941). The definition offered in *Boynton Cab* was:

[T]he intended meaning of the term "misconduct," ... is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be

deemed "misconduct" within the meaning of the statute.

*Boynton Cab,* 237 Wis. at 259–60, 296 N.W. at 640. This definition was found to be consistent with the then current administrative rules in *Arizona Department of Economic Security v. Magma Copper Co.,* 125 Ariz. 389, 393, 609 P.2d 1089, 1093 (App.1980).

However, in *Nunn v. Arizona Department of Economic Security,* 128 Ariz. 121, 124, 624 P.2d 318, 321 (App.1980), this court expressly stated, "[t]his court ... is not limited by the strict definition of misconduct enunciated by the Wisconsin Court in *Boynton.*" Despite this language, appellant contends that the *Nunn* court went on to apply the *Boynton Cab—Magma Copper* standard because the employee was discharged for a very serious and substantial neglect of her duties.

Appellant's interpretation of *Nunn* does not determine the outcome in this case. *Nunn* relied on the definition of misconduct found in A.R.S. § 23–619.01(A) which stated:

> A. "Misconduct connected with the employment" means any act or omission by an employee which constitutes a material or substantial breach of the employee's duties or obligations pursuant to the employment or contract of employment or which adversely affects a material or substantial interest of the employer.

The appeals board held that based on appellant's lengthy tenure and on his position of responsibility, his actions in sending the memoranda were of such a serious nature that a material and substantial breach of his duties *did* occur.

Various provisions of the Arizona Official Compilation of Administrative Rules and Regulations are instructive in this case. A.C.R.R. R6–3–5145(B)(1) and (3) provide:

> B. 1. When a worker expresses dissatisfaction with his employer or stirs up resentment against his employer, the conditions under which the action occurs and the worker's reason for taking such action will determine whether misconduct connected with the work is established.
>
> \*   \*   \*   \*   \*   \*
>
> 3. When a worker creates or expresses dissatisfaction, discontent, or resentment toward his employer for purposes other than to remedy problems, or improve working conditions, there is a strong indication of misconduct.

Appellant argues that his actions were merely good-faith errors in judgment, and that his intention was to clear up any confusion surrounding the project. However, appellant's testimony to the Appeal Tribunal indicates that he wrote the letters in an attempt to head off disciplinary action against himself. These motives are inconsistent and the appeals board did not err in finding misconduct based on the application of the above-cited regulations.

Appellant's actions also constitute disloyalty under A.C.R.R. R6–3–5145(F)(1) and (3). Those sections state:

> F. 1. Disloyalty is misconduct when manifested by acts or omissions by a worker which establish a breach o[f] the obligations owed to the employer.
>
> \*   \*   \*   \*   \*   \*
>
> 3. Knowingly, speaking or demonstrating against the employer's product(s) or operation in a manner which could adversely affect the confidence of customers or damage the reputation of the employer constitutes a disregard of the employer's interest.

Appellant contends that the memoranda did not harm Motorola because the outside parties already knew of the financial problems and that the outside parties continued to do business with Motorola. Contrary to appellant's argument, Krueger testified that some of the outside contractors and consultants had expressed concerns to him about whether or not they would be paid on time. Whether or not Motorola's reputation was harmed is irrelevant, because A.C.R.R. R6–3–5145(F)(3) only requires that the employee's actions "could adversely affect" the employer. The appeals board was justified

in finding that the memoranda could be or were harmful to Motorola.

## STANDARD OF REVIEW

Appellant argues that the court of appeals is not bound by the legal conclusions of the appeals board, but instead may draw its own legal conclusions in determining whether the appeals board erred in its interpretation of the law. Furthermore, he argues, the court of appeals may review the legal effect of a fact when findings involve mixed questions of law and fact. On the other hand, Motorola alleges that the court of appeals must affirm the appeals board's decision unless it is arbitrary, capricious, or an abuse of discretion. Additionally, Motorola urges that, if the appeals board's decision is supported by any substantial evidence in the record, the decision should be affirmed.

Appellant relies on the case of *Prebula v. Arizona Department of Economic Security*, 138 Ariz. 26, 672 P.2d 978 (App. 1983), which held:

> On appeal, this court views the evidence in a light most favorable to upholding the decision of the appeals board and will affirm that decision if it is supported by any reasonable interpretation of the record. (Citations omitted.) This court does not sit as a trier of fact in the review of appeals board decisions in unemployment benefit proceedings. (Citations omitted.) The board's legal conclu-sions, however, are not binding on this court, and we are free to draw on our own legal conclusions in determining if the board erred in its interpretation of the law....

*Prebula*, 138 Ariz. at 30, 672 P.2d at 982. However, the *Prebula* decision went on to uphold the appeals board's legal conclusions based on a review of the applicable law and factual findings. Similarly, we uphold the legal conclusions of the appeals board in the present case.

We have determined that the current administrative regulatory scheme replaces the definition of misconduct that was advanced in *Boynton Cab* and adopted by *Magma Copper*. We also hold that the appeals board was justified in finding that based on appellant's position and tenure with the employer, his memoranda to outside parties constituted misconduct connected with his employment.

Affirmed.

CONTRERAS, P.J., and BROOKS, J., concur.