(No. 37764.—

KARTRIDG-PAK Co., INC., Appellant, *vs.* ROBERT JOHNSTON, Director of Labor, *et al.,* Appellees.

*Opinion filed September 27, 1963.*

MAYER, FRIEDLICH, SPIESS, TIERNEY, BROWN & PLATT, of Chicago, (EDWARD R. LEV and JOHN D. DONLEVY, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW and A. ZOLA GROVES, Assistant Attorneys General, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This appeal presents the question whether the claimant, Bruno Bertucci, a former employee of plaintiff, the Kartridg-Pak Co., Inc., was disqualified from receiving unemployment compensation benefits for the period from October 21, 1960, through December 10, 1960, by reason of his failure "to accept suitable work when offered him." (Ill. Rev. Stat. 1959, chap. 48, par. 433.) The Board of Review of the Illinois Department of Labor, affirming the finding of a departmental referee, decided that no firm and definite offer of employment had been made to claimant and that he was not therefore ineligible for benefits. Subsequently, in a proceeding for administrative review, the circuit court of Cook County affirmed the decision of the board, and plaintiff, under authority of section 1100 of the Unemployment Compensation Act, (Ill. Rev. Stat. 1959, chap. 48, par. 520) has perfected a direct appeal to this court. Broadly stated, it is plaintiff's contention that claimant was offered and refused work and that the finding of the board is against the manifest weight of the evidence.

The claimant, a 50-year-old married man with a family, was employed by plaintiff for a 14-year period extending from 1946 to October 21, 1960. The plaintiff at one time apparently had three plants and, initially, claimant worked at the Fullerton Avenue plant where he was in charge of shipping and receiving, and occasionally worked in the stockroom. When that plant was closed down he was trans-

ferred to plaintiff's Mount Prospect plant where he did substantially the same work. In 1952 he was transferred to the Pacific Avenue plant and, just prior to October 21, 1960, was there working at a job entailing inventory and parts under the supervision of a man named Mojonnier, an employee of plaintiff who was engaged in what is described in the record as a plastic milk carton project. Mojonnier, according to a witness for plaintiff, was negotiating for the purchase of the project and the sale was eventually consummated in such manner that Mojonnier was to assume all expenses of the operation from and after October 1, 1960. It is clear, however, that Mojonnier did not then assume the expenses of claimant's wages, for it is agreed that claimant continued in plaintiff's employ until October 21, 1960, when plaintiff shut down all of its operations in the Pacific Avenue plant. On the latter date, according to the claimant, he and two other employees of plaintiff were laid off without prior notice and informed that the plant was being closed.

Three days later, on October 24, claimant filed a claim for unemployment compensation benefits, and on October 27 the administrative dispute had its origin when plaintiff filed with the Director of Labor a notice of "Possible Ineligibility." Among other things, the notice represented: (1) that claimant had been advised the plaintiff had another job for him at a different plant, but claimant had never indicated he was interested in such job; and (2) that both Mojonnier and claimant had advised plaintiff that claimant was working for Mojonnier on a temporary basis. Claimant's unemployment continued until late January, 1961, two days prior to the hearing before the referee, when he obtained employment at $50 a week.

There were but two witnesses who testified at the administrative hearing, the claimant and Alex Mackenzie, the latter being plaintiff's assistant general manager. Although he did not fix the exact date, it was the testimony of Mackenzie that he had discussed the matter of claimant's em-

ployment with Mojonnier and that the latter, while stating that he could use claimant as his own employee on a part time basis to start with and on a full time basis within a month or two, had said that plaintiff should keep claimant if it needed him. On October 18, 1960, still according to Mackenzie, plaintiff's foreman at the Pacific Avenue plant, a Robert Raufeisen, told claimant that plaintiff needed him due to his familiarity with plant operations and parts and offered claimant a job either in the crib room or the assembly room, or both. In reporting the matter to Mackenzie, Raufeisen stated the claimant had replied he felt he had a good prospect with Mojonnier and thought he had better stick with him, and that he, Raufeisen, had closed the conversation by telling claimant that if he changed his mind, or if the employment with Mojonnier did not work out, he should reconsider plaintiff's offer and contact Raufeisen.

The claimant denied that he had engaged in a conversation with Raufeisen on October 18, and testified that the first knowledge he had of his change of status was on October 21 when he was abruptly laid off. He made a specific denial that Raufeisen had offered him work, or that he had said he had a good thing with Mojonnier. As to the latter aspect, claimant said that he had not discussed employment with Mojonnier, whom he described as having no business, no customers and nothing with which to pay employees. He did testify, however, that while he was looking for work after being discharged by plaintiff he had, on a part-time basis and without pay, helped Mojonnier move from the Pacific Avenue plant, and said he had done so because he had little to do and hoped it would lead to future employment.

On or about October 25, 1960, by Mackenzie's further testimony, Raufeisen again asked claimant if he was interested in continuing with plaintiff, but claimant answered that he was not sure and then defaulted in a promise to let Raufeisen know within the week. The claimant, while agree-

ing that he had a conversation with Raufeisen on this occasion, denied that he had been offered work and testified that the foreman, without mentioning a particular job or salary, had remarked only that "he would like to see me working at Mount Prospect."

Though there is disagreement over the exact date, it is undisputed that claimant and two other employees, who had been laid off when the Pacific Avenue plant was closed down, had a meeting with Mackenzie on October 25 or 26. By Mackenzie's version, the purpose of the meeting was "to discuss other employment for the three men," and he testified that he had disposed of the problem as it related to claimant by stating that "we didn't need to worry about Bruno because he was working and we had offered him his job back." He said he then asked claimant if he was interested but the latter said he would let them know.

Claimant, who points out that he had no employment when the meeting was held, testified that its purpose was to discuss vacation and severance pay due the three men as the result of their discharge. According to him, Mackenzie also did no more than to remark that he would "like to see" plaintiff and one of the other men working at the Mount Prospect plant, but mentioned no particular work or salary, and in the next breath said he would help the men locate other jobs and give them references if needed.

Subsequently, on November 15, 1960, plaintiff sent a letter to the claimant, wherein it was stated:

"You will recall our visit in my office a short time ago concerning your possible separation from our employment following the purchase of Project X by Mr. Mojonnier. I mentioned to you that Bob Raufeisen was still waiting to hear from you regarding his offer of a job in the crib room or in assembly.

In the meantime I have checked into company policy regarding separation from employment to determine whether we could allow severance pay in your case. I am advised that this policy does not allow severance pay in the case of an employee who separates himself from our employment voluntarily.

Your separation would have to be considered voluntary since

you could have continued to work for us if you had chosen to. Therefore the check which you are receiving is for the difference between the vacation pay you had earned and the extra week's salary included in the last three week pay check.

If you have any questions concerning this, please call Jim Martin or me. Meanwhile, let me wish you the very best for the future and let us hear from you if you wish to reconsider our offer of a job or if I can give you a hand in locating a position to your liking or with a letter of recommendation."

This communication, we believe it significant to note, was written after the administrative issue had been drawn between the parties and was in the hands of the Director of Labor for determination.

Claimant admittedly did not respond to the letter and testified that he had not done so because the statements in it were not true, and because he had been told by Mojonnier during a conversation on October 28, 1960, that plaintiff planned to offer him only temporary work at a substantial cut in salary. Earlier, when the matter was being investigated by a deputy, claimant is purported to have said he ignored the letter because the Mount Prospect plant was up for sale.

Upon a consideration of all the facts, substantially as stated, the board found in pertinent part: "The evidence in this proceeding fails to establish with clarity and definiteness that the appellant-employer made a firm and definite offer to the claimant after he was terminated by the company on October 21, 1960. Vague and veiled references to possibilities of employment are so speculative and so lacking in concrete detail as to type of work, wage rate, hours of employment, and other aspects of the employment as to give rise to the presumption that the appellant failed to give a definite offer of employment to the claimant on which he could act. Consequently, in the absence of a specific offer of employment by the company to the claimant, there could be no refusal and there could be no applicability of Section 603 of the statute with respect to his claim."

Section 603 of the Unemployment Compensation Act

provides in part: "An individual shall be ineligible for benefits if he has failed, without good cause, * * * to accept suitable work when offered him by the employment office or an employing unit, * * *." (Ill. Rev. Stat. 1959, chap. 48, par. 433.) Our problem is whether the finding of the board that plaintiff did not make an offer of employment to claimant is against the manifest weight of the evidence.

In matters of this nature arising under the provisions of the Unemployment Compensation Act we have repeatedly held that findings of fact by the Director of Labor or the board of review will not, and may not, be disturbed on review unless they are manifestly against the weight of the evidence. (*Buchholz* v. *Cummins,* 6 Ill.2d 382; *Abbott Publishing Co.* v. *Annunzio,* 414 Ill. 559; *Mohler* v. *Department of Labor,* 409 Ill. 79.) And from our examination of the administrative record here presented, we cannot say that the finding of the board is against the manifest weight of the evidence.

Disregarding the letter of November 15, 1960, for the moment, the issue presented is a narrow one, particularly under the circumstance that Mojonnier, Raufeisen and the two employees discharged with claimant, all of whom could have materially aided the board in resolving the dispute, were not called as witnesses. On the one hand there is the testimony of the claimant that he was never put to an election of choosing to work for Mojonnier or plaintiff but was discharged outright, and that plaintiff's officials had not offered him work but had made only vague and patronizing statements, which in no sense could be considered an offer of work, to the effect that they would "like to see" him working at the Mount Prospect plant. On the other side there is the testimony of Mackenzie that an offer of a definite job was made, and that claimant had refused it because he was electing to go with Mojonnier. As presented, therefore, the issue was largely one of determining which testimony was to be accepted, and although plaintiff argues

strenuously to the contrary, we see no basis to upset the choice of the board in such regard.

At various times during the highly informal hearing the claimant made statements to the effect that he didn't believe Raufeisen had authority to hire, that he had heard a rumor that the Mount Prospect plant was to be sold and, as previously stated, that he had been told by Mojonnier on October 28 that plaintiff intended to give him only temporary work at a reduced salary. We are not impressed, however, with plaintiff's contention that these statements were "reasons" given by claimant for rejecting the offer of employment, which "reasons," in turn, establish that an offer of employment was made. Read in their proper context, the first two statements were no more than rebuttal to Mackenzie's testimony that claimant had been offered work in the Mount Prospect plant by Raufeisen and do not admit to the innuendo in which the plaintiff would have us indulge. Further, we see no proof of a prior offer of work in the information the claimant said he was given by Mojonnier on October 28. What he learned from Mojonnier on that date, a week after his discharge and several days after his conference with Mackenzie, could most certainly have no valid reference to the purported refusals of work by the claimant on October 18 and 25.

Nor do we find that plaintiff's letter of November 15, written by Mackenzie, swings the balance against the decision of the board. Apart from the circumstance that it was written after a full-blown administrative dispute had arisen, at least creating an aura of a self-serving purpose, the "offer of a job," to which it refers and asks claimant to "reconsider," was no more than repetition of Mackenzie's oral testimony which was denied by claimant and otherwise unsubstantiated. Accepting the testimony of the claimant as true, as the board and circuit court have done before us, we conclude the administrative decision was correct in its finding that no offer of work was made to the claimant. This

being so, any consideration as to the detail which an offer of employment should contain is rendered unnecessary. See: *Johnston* v. *Chrysler Corporation,* —Del.—, 178 A.2d 459; *Muncie Foundry, etc.* v. *Review Board,* 114 Ind. A. 475, 51 N.E.2d 891.

What has been said disposes largely of plaintiff's remaining contention, namely, that claimant is not entitled to benefits because he voluntarily quit his employment with plaintiff and elected to go with Mojonnier. The decided weight of the evidence in the record is that claimant was discharged by plaintiff, and that he did not have and was not offered employment by Mojonnier. Moreover, as plaintiff's own authorities show, ineligibility for benefits on the basis of a "voluntary quit" is based upon either proof or presumption that the job left by the employee remained open to him. (See: *Canton Malleable Iron Co.* v. *Green,* 75 Ohio A. 526, 62 N.E.2d 756; 81 C.J.S., Social Security and Public Welfare, sec. 189.) Here, claimant's job was abolished when plaintiff shut down the Pacific Avenue plant, and it cannot be said that he voluntarily quit a job he never had, or which the board found was never offered to him.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*