298 S.E.2d 137

**Scott GIBSON**

v.

**Phyllis J. RUTLEDGE.**

**No. 15276.**

Supreme Court of Appeals of West Virginia.

Nov. 24, 1982.

Robert J. Lamont, Charleston, for petitioner.

Richard H. Talbott, Jr., Brown, Harner & Busch, Elkins, for respondents.

McGRAW, Justice:

The appellant, Scott Gibson, appeals from a final order of the Circuit Court of Kanawha County, which affirmed the ruling of the Board of Review of the West Virginia Department of Employment Security, holding that the appellant is disqualified from receiving six weeks of unemployment benefits because he quit his previous job voluntarily without good cause involving fault on the part of the employer, within the meaning of W.Va.Code § 21A–6–3(1) [1978]. The appellant's sole contention on appeal is that an employee who is injured and is forced to quit work to recuperate has not voluntarily quit within the meaning of the statute, and therefore should not be disqualified from receiving unemployment benefits when he is again able and willing to work. We agree.

The appellant was hired as a laborer by New Era Resources, Inc. on February 21, 1977. When he was first hired, his primary work assignment was to drive trucks, but he was later assigned to load coal. On March 8, 1979, the appellant fell from an icy embankment into a truck he was loading and sustained a serious back injury. Under orders from his physician, the appel-

lant was forced to miss work for seven months. After requesting and receiving his physician's approval to return to work, the appellant attempted to return to his job in November, 1979. When he arrived at his place of employment, he was informed for the first time that his position had been filled by a new employee.

On December 18, 1979, the appellant, having attempted unsuccessfully to obtain another job, applied for unemployment compensation. Although his claim was held to be compensable, the appellant was disqualified from receiving benefits for six weeks because he was found to have voluntarily quit his work without good cause involving some fault on the part of the employer. The appellant unsuccessfully challenged this initial ruling before the Board of Review of the West Virginia Department of Employment Security and then to the circuit court.

The applicable portion of W.Va.Code § 21A–6–3(1) [1978], under which appellant was disqualified, provides: "Upon the determination of the facts by the commissioner, an individual shall be disqualified for benefits: (1) For the week in which he left his most recent work voluntarily without good cause involving fault on the part of the employer and the six weeks immediately following such week." The key word "voluntarily" is not defined in the statute and it is upon the meaning of this word that the present case rests.

The leading West Virginia case in which this Court has attempted to explain the meaning of W.Va.Code § 21A–6–3(1) is *State v. Hix*, 132 W.Va. 516, 54 S.E.2d 198 (1949). In *Hix*, three claimants ceased work as the result of health conditions. One claimant had a bladder condition, another claimant suffered from hypertension, and the third claimant was advised by her physician to quit work so that she would not contract tuberculosis from the dust in the work place. This Court held that all three claimants had quit work voluntarily. The first two claimants were ineligible for unemployment compensation because they were not able to work. The third claimant, while eligible for unemployment compensa-

tion, was disqualified because she quit voluntarily. Syllabus point two of *Hix* provides, in part:

> [A]n employee who ceases work on account of illness, or fear of illness, or for any cause not involving fault on the part of his employer, is not entitled to unemployment benefits for the week following his cessation of work, and the six weeks immediately following such week. If unable to work during such period, he is ineligible to receive unemployment benefits; and if eligible therefor, he is disqualified under said section to receive such benefits.

■ In reaching its decision in *Hix* the Court defined the word "voluntarily" to mean "the free exercise of the will." *State v. Hix, supra*, 132 W.Va. at 522, 54 S.E.2d at 201, and rejected the argument that when an employee ceases work as a result of a health problem that prevents that employee from being physically or mentally capable of performing his job duties, he has not done so voluntarily with the free exercise of his will.\* We agree with the definition of "voluntarily" stated in *State v. Hix, supra*. However, we do not agree with the Court's application of W.Va.Code § 21A–6–3(1).

Almost every state has a disqualification statute similar to W.Va.Code § 21A–6–3(1) included in its unemployment compensation law, and with few exceptions, claimants who quit work are to some extent disqualified from receiving benefits under these statutes. *See* 1B Unemply.Ins.Rep. (CCH) ¶ 3000 for a summary of the unemployment compensation laws in effect throughout the United States. In interpreting such statutes courts in other jurisdictions focus on whether the claimant had good cause for quitting his employment which was attributable to the employer. This was the approach we followed in *State v. Hix, supra*. In such cases little or no weight is placed on the meaning or effect of the word "voluntarily." *See, e.g., DeLorenzo v. Board of Review, Division of Employment Security*, 100 N.J.Super. 473, 242 A.2d 640 (1968); *Bussmann Mfg. Co. v. Industrial Commission of Missouri*, 327 S.W.2d 487 (Mo.App.1959).

However, this approach ignores one of the primary purposes of the West Virginia Unemployment Compensation Act, which is to compensate individuals who are involuntarily unemployed. *Lee-Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477, 482 (1982); *Miners in General Group v. Hix*, 123 W.Va. 637, 646, 17 S.E.2d 810, 815 (1941). W.Va.Code § 21A–6–3(1) is included in the Act to disqualify those employees who are voluntarily unemployed and who therefore should not be entitled to the same benefits and treatment as involuntarily unemployed individuals. We therefore believe that a consideration of the meaning of the term "voluntarily" as used in W.Va. Code § 21A–6–3(1) is necessary to a proper interpretation of the legislative intent.

A trenchant analysis of the meaning of the word "voluntarily" as it is used in unemployment compensation statutes was made in *Bliley Electric Co. v. Unemployment Compensation Board of Review*, 158 Pa.Super. 548, 556, 45 A.2d 898, 903 (1946):

> "Voluntarily" and "involuntarily" are antonymous and therefore irreconcilable words, but the words are merely symbols of ideas, and the ideas can be readily reconciled. Willingness, wilfulness, volition, intention reside in "voluntarily," but

---

\* The Court reasoned:

> It seems to us quite apparent that what the Legislature has intended was to guard against the abuses which might arise from permitting employees to voluntarily quit work on account of real or fancied ailments, and still be in position to apply for and receive benefits from the unemployment compensation fund. We think it fair to assume that the purpose of the Unemployment Compensation Act of 1936 was to encourage employment because upon employment and the wages paid to employees depends the solvency of the fund built up for

> the protection of employees against the risks of unemployment. Any interpretation of the act, which encourages people not to work, can scarcely be considered as having been within the intent of the Legislature or of the proponents of the unemployment compensation system. If we should place upon the act the construction contended for by the State, we would, to some extent, convert the fund into a species of health insurance, and, this we are certain, the Legislature never intended.

*State v. Hix, supra*, 132 W.Va. at 523–524, 54 S.E.2d at 201–202.

the mere fact that a worker wills and intends to leave a job does not necessarily and always mean that the leaving is voluntary. Extraneous factors, the surrounding circumstances, must be taken into the account, and when they are examined it may be found that the seemingly voluntary, the apparently intentional, act was in fact involuntary. A worker's physical and mental condition, his personal and family problems, the authoritative demand of legal duties—these are circumstances that exert pressure upon him and imperiously call for decision and action.

When therefore the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances *compel* the decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have compelled it. [Footnote omitted] Or to state it differently, if a worker leaves his employment when he is compelled to do so by necessitous circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is entitled to benefits. The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment.

The analysis employed by the court in *Bliley Electric Co., supra,* is particularly relevant where an employee is forced to quit work as a result of a health-related problem which prevents him from continuing work. In one sense, such an employee has quit voluntarily because he was not fired or suspended by his employer. However, it is also clear that the employee did not freely choose to quit his job, but rather was forced to do so for the good of his health.

■ In *Fannon v. Federal Cartridge Corporation,* 219 Minn. 306, 311, 18 N.W.2d 249, 252 (1945), the Minnesota Supreme Court analyzed the problem of the health-related termination of employment and concluded:

> While [the claimant] intended to terminate her employment, and to this extent it may be argued that such termination was voluntary, on the other hand, it is clear that her health and personal welfare made it imperative for her to stop without further delay; in fact, the evidence indicates that had she not left her work after her collapse in May 1943 she would in all probability have been carried out of the plant on a stretcher. An act of necessity may not be a voluntary act. [Citations omitted] We cannot escape the conclusion that where, as here, an employee is impelled because of sickness and disease to terminate employment because continuance thereof would endanger his health and personal welfare, such termination is an involuntary rather than a voluntary act on the part of the employee within the meaning of [the Minnesota Unemployment Compensation Act].

We agree with the reasoning of the Supreme Court of Minnesota that an employee who has been compelled to terminate his employment for reasons of health cannot be said to have voluntarily quit his job.

■ We have previously held in syllabus point six of *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954), that "[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." *See also London v. Board of Review,* 161 W.Va. 575, 244 S.E.2d 331 (1978). The beneficent purposes of the West Virginia Unemployment Compensation Act are set out in W.Va.Code § 21A–1–1 [1978]. These purposes include to:

> [P]rovide reasonable and effective means for the promotion of social and economic security by reducing as far as practicable the hazards of unemployment. In the furtherance of this objective, the legislature establishes a compulsory system of unemployment reserves in order to:
>
> (1) Provide a measure of security to the families of unemployed persons.

(2) Guard against the menace to health, morals and welfare arising from unemployment.

(3) Maintain as great purchasing power as possible, with a view to sustaining the economic system during periods of economic depression.

(4) Stimulate stability of employment as a requisite of social and economic security.

(5) Allay and prevent the debilitating consequences of poor relief assistance.

In interpreting the unemployment compensation statutes, we must liberally construe the various provisions to achieve these benign purposes.

An example of a liberal interpretation of the Act, in circumstances analagous to those presented here, is our recent case involving disqualification resulting from misconduct that was health related. *Kirk v. Cole*, 169 W.Va. 520, 288 S.E.2d 547 (1982). We held in the syllabus of *Kirk:* "Absence from work due to illness does not constitute misconduct within the meaning of W.Va.Code, 21A–6–3(2) [1981] and a claimant for unemployment compensation will not be disqualified from receiving benefits for the six-week statutory period because he or she was discharged for excessive absenteeism due to illness."

We further note that under W.Va.Code § 21A–6–5 [1963] the commissioner must consider the degree of risk involved to the individual's health, safety and morals, and the individual's physical fitness and prior training, in deciding if work is suitable for an unemployed individual. It would be inconsistent for the Unemployment Compensation Act to be read to allow an unemployed individual to refuse suitable work because he is suffering from some health-related problem and not be disqualified, while an unemployed individual who is forced to quit his job because of a health problem is disqualified from receiving benefits when he is once again able and willing to work. In order to remove this inconsistency, we must hold that when an employee is forced to quit his job because of a health problem, he has not done so voluntarily.

 In accordance with the beneficent purposes of the Unemployment Compensation Act, we therefore conclude that when an employee ceases work as a result of an injury or other health-related problem and later attempts to return to work after recovering from the health problem, only to find that his employment has been terminated during his absence, such employee has not "voluntarily" left his work within the meaning of W.Va.Code § 21A–6–3(1) [1978].

Accordingly, the judgment of the Circuit Court of Kanawha County is reversed and this case is remanded with directions to enter judgment for the appellant. To the extent that syllabus point two of *State v. Hix, supra,* is inconsistent with today's holding, it is hereby overruled.

Reversed and remanded.