310 S.E.2d 491

**Douglas W. LOUGH**

v.

**Phyllis J. COLE, Clerk, etc., et al., and Will H. Melet Co.**

No. 15908.

Supreme Court of Appeals of West Virginia.

Dec. 15, 1983.

Robert J. Lamont, WVLSP, Charleston, for appellant.

Will H. Melet Co., Clarksburg, for appellee.

McHUGH, Justice:

This action is before this Court upon the petition of Douglas W. Lough for an appeal from the final order of the Circuit Court of Kanawha County, West Virginia, dated April 11, 1983.[1] Pursuant to that order, the circuit court affirmed the decision of the Board of Review of the West Virginia Department of Employment Security denying the petitioner unemployment compensation benefits. This Court has before it the petition for appeal, all matters of record and the brief and argument of counsel for the petitioner. The respondents did not appear for argument or file briefs before this Court.

The petitioner, Douglas W. Lough, worked for the respondent, the Will H. Melet Co., (hereinafter "Melet"), as a salesman from June 21, 1982, until June 30, 1982.[2] Melet was located in Clarksburg, West Virginia. At the time the petitioner was hired, he was informed that Melet was going out of business. In July, 1982, after the petitioner left his employment, Melet ceased doing business.

A few days after the petitioner left Melet, he began working for another employer, at a Burger Chef, and remained in that employment until July 28, 1982. The petitioner testified before the Department of Employment Security that he left Melet to work at Burger Chef because Melet was going out of business. The record indicates that the Burger Chef in question also ceased doing business in July, 1982.[3]

The petitioner sought unemployment compensation benefits, and by decision dated September 16, 1982, a deputy of the Department of Employment Security held that the petitioner was eligible to receive such benefits. The deputy further held, however, that the petitioner was disqualified (indefinitely from June 27, 1982) from receiving such benefits.

The decision of the deputy disqualifying the petitioner from receiving unemployment compensation benefits was later affirmed by an administrative law judge of the Department of Employment Security

---

1. By order entered on June 7, 1983, this Court issued a writ of certiorari in this action. Pursuant to *W.Va.Code*, 58-5-25 [1931], this Court, by order entered on June 21, 1983, granted the petitioner's motion for leave to move to reverse.

2. The record indicates that prior to the September 16, 1982, decision of the deputy of the West Virginia Department of Employment Security, the petitioner stated in a "fact finding report" of the Department that he had worked for Melet "when needed" as early as May, 1982. The petitioner later testified before an administrative law judge of the Department, however, that his employment with Melet began on June 21, 1982.

3. The petitioner testified before the Department of Employment Security as follows:

A. Well I went—a friend of mine went—was the Manager of Burger Chef up town. And he asked me if I would like to work with him and I thought it was going to be a full-time job so I left and then Burger Chef went out of business.

. . . .

Q. Did they indicate to you that when ... [Melet] went out of business you would no longer have work?

A. Well that is why I went to Burger Chef because I knew that they was [sic] going out. (Transcript, October 14, 1982—before the administrative law judge, West Virginia Department of Employment Security, at 4 and 6.

and, subsequently, by the Department's Board of Review.

Pursuant to *W.Va.Code*, 21A–7–17 [1967], the petitioner appealed the decision of the Board of Review to the Circuit Court of Kanawha County. As reflected in its final order dated April 11, 1983, the circuit court upheld the petitioner's disqualification for benefits.[4]

It should be noted that no issue has been raised before this Court concerning the petitioner's eligibility for unemployment compensation benefits. This Court, therefore, has before it the narrow question of whether the petitioner was properly disqualified from receiving such benefits because he allegedly left his employment with Melet voluntarily.

The circuit court based its finding of disqualification upon the provisions of *W.Va.Code*, 21A–6–3 [1981]. That statute provides, in relevant part, as follows:

> Upon the determination of the facts by the commissioner, an individual shall be disqualified for benefits:
>
> (1) For the week in which he left his most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in covered employment at least thirty working days.

In syllabus point 1 of *Kisamore v. Rutledge*, 166 W.Va. 675, 276 S.E.2d 821 (1981), we held that "[f]indings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong; however, the plainly wrong doctrine does not apply to conclusions of law by the Board of Review."[5] In the action now before this Court, the Board of Review adopted a determination by the administrative law judge that the termination of the petitioner's employment with Melet resulted from the "sole decision" of the petitioner and did not involve fault upon the part of Melet. *See* n. 4, *supra*. Similarly, the circuit court in its final order indicated that the petitioner left Melet voluntarily.

In *Kartridg-Pak Co. v. Johnston*, 28 Ill.2d 616, 192 N.E.2d 867 (1963), the employer shut down the plant where the claimant had been working. The testimony in that action was in dispute as to whether the claimant was discharged by the employer as a result of the closing of the plant or whether the claimant, shortly before the closing, voluntarily left his employment to seek another job. In affirming the claimant's eligibility for unemployment compensation benefits, the Supreme Court of Illinois in *Kartridg-Pak Co.* concluded that

---

**4.** The decision of the administrative law judge was dated October 15, 1982, and was based upon testimony taken before that judge on October 14, 1982. The decision of the administrative law judge states, in part, as follows:

> The reason or necessity for the termination of this employer-employee relationship [with Melet] is the result of the sole decision of claimant and does not involve any fault on the part of the employer, consequently, as between claimant and employer, the separation is considered as being the voluntary act of claimant....

The Board of Review, by decision dated January 28, 1982, adopted the findings of the administrative law judge.

The decisions of the deputy, administrative law judge, Board of Review and circuit court based the petitioner's disqualification from receiving unemployment compensation benefits upon the provisions of *W.Va.Code*, 21A–6–3(1) [1981].

**5.** It should be noted that the purpose of *W.Va. Code*, ch. 21A, known as the "Unemployment Compensation Law," is set forth in *W.Va.Code*, 21A–1–1 [1978]. *W.Va.Code*, 21A–1–1 [1978], provides, in part, as follows: "The purpose of this chapter is to provide reasonable and effective means for the promotion of social and economic security by reducing as far as practicable the hazards of unemployment."

Furthermore, in syllabus point 6 of *Davis v. Hix*, 140 W.Va. 398, 84 S.E.2d 404 (1954), this Court held that "[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." *See also Belt v. Cole*, 172 W.Va. 383, 305 S.E.2d 340, 342 (1983); syl. pt. 1, *Gibson v. Rutledge*, 171 W.Va. 164, 298 S.E.2d 137 (1982); syl. pt. 1, *Lee-Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982); *Kirk v. Cole*, 169 W.Va. 520, 288 S.E.2d 547, 549 (1982); *Hill v. Board of Review*, 166 W.Va. 648, 276 S.E.2d 805, 812 (1981); *London v. Board of Review of the West Virginia Department of Employment Security*, 161 W.Va. 575, 244 S.E.2d 331, 333 (1978); *Bennett v. Hix*, 139 W.Va., 75, 83, 79 S.E.2d 114, 118 (1953).

the weight of the evidence indicated that the claimant had been discharged from his employment. The court further concluded that an offer by the employer to the claimant of employment at another plant operated by the employer was too indefinite to render the claimant ineligible for benefits.

With respect to the employer's assertion that the claimant voluntarily left his employment to seek another job, the court, in *Kartridg-Pak Co.,* noted as follows:

[I]neligibility for benefits on the basis of a 'voluntary quit' is based upon either proof or presumption that the job left by the employee remained open to him. [citation omitted] Here, claimant's job was abolished when plaintiff shut down the Pacific Avenue plant, and it cannot be said that he voluntarily quit a job he never had, or which the board found was never offered to him.

28 Ill.2d at 624, 192 N.E.2d at 871.

Similarly, the employer in *Becote v. Commonwealth, Unemployment Compensation Board of Review,* 18 Pa.Cmwlth. 639, 339 A.2d 856 (1975), shut down the plant where the claimant had been working. Thereafter, the claimant did not seek work from the employer which the employer asserted was available at a new plant at a new location. In holding that the claimant was entitled to unemployment compensation benefits, the Commonwealth Court of Pennsylvania in *Becote* indicated that the claimant, after the closing of the old plant, would have been out of work through no fault of her own for a certain period of time, regardless of the possibility of employment at the new plant. Rejecting the employer's contention that the claimant quit her work voluntarily, the court stated as follows:

[T]he circumstances were such that the claimant could not be legally presumed to have quit her job. Obviously, she cannot be held to have voluntarily terminated her employment relationship when it was the fact that her employer decided to go out of business which brought about her unemployment, at least initially.

18 Pa.Cmwlth. at 642, 339 A.2d at 858.

In *Anthony Adams AIA Architect v. Department of Employment Security,* 139 Vt. 413, 430 A.2d 446 (1981), the employer and the claimant agreed at the time of hiring that the claimant's employment would be for a temporary assignment of four to six weeks. The claimant actually worked for six weeks, after which the job was completed and the work terminated. Holding that the claimant was entitled to unemployment compensation benefits, the Supreme Court of Vermont, in *Anthony Adams AIA Architect,* concluded that an employee who accepts a temporary position does not leave that position voluntarily at the end of the agreed period. The court stated as follows: "At the end of the six weeks worked by the employee in this case, the job for him simply ceased to exist. He did not have the option of continuing to work. The claimant became unemployed because of a lack of work, not because he voluntarily left his position." 139 Vt. at 414–15, 430 A.2d at 447.

On the other hand, the Supreme Court of Delaware in *Wilmington Country Club v. Unemployment Insurance Appeal Board,* 301 A.2d 289 (Del.1973), held a claimant to be ineligible for unemployment compensation benefits in a case where the claimant, in accepting employment, knew the employment was for a limited duration. In that case, the claimant was employed by a country club as a bartender for special occasions and earned only $77 during the year in question. The Delaware court noted that "[a]t no time was he a regular full or part time employee of the Club." 301 A.2d at 290. In finding ineligibility for benefits, the court stated as follows: "We think the acceptance of employment under these conditions amounted to voluntary termination of the employment at the expiration of the limited occasion. Furthermore, we think it is plain that such voluntary termination was without 'good cause'." 301 A.2d at 290.

The petitioner in this action indicated that he worked for Melet from June 21,

1982, until June 30, 1982. The record indicated, however, that the petitioner may have been employed by Melet in some capacity "when needed" since May, 1982. *See* n. 2, *supra.* We conclude that the petitioner did not leave his employment with Melet voluntarily without good cause under *W. Va. Code,* 21A–6–3(1) [1981]. The claimant was not disqualified from receiving unemployment compensation benefits. Consequently, we need not discuss that provision of *W. Va. Code,* 21A–6–3(1) [1981], which states that an individual shall be disqualified for benefits under *W. Va. Code,* 21A–6–3(1) [1981], *"until* the individual returns to covered employment and has been employed in covered employment at least thirty working days." (emphasis added).

We find the *Kartridg-Pak Co., Becote* and *Anthony Adams AIA Architect* cases persuasive. There is no dispute in the record that Melet was in the process of going out of business at the time the petitioner left that employment. The petitioner left his employment because Melet was going out of business. Melet ceased doing business in July, 1982. The petitioner cannot be held to have voluntarily terminated his employment with Melet when it was the fact that Melet "decided to go out of business which brought about … [his] unemployment, at least initially." *Becote, supra.* We find it commendable that the petitioner sought other employment.

■ We hold that where an employee left his employment to seek other work because the employer was in the process of going out of business, that employee was not disqualified from receiving unemployment compensation benefits under the provisions of *W. Va. Code,* 21A–6–3(1) [1981], which section states, in part, that an individual shall be disqualified for benefits "[f]or the week in which he left his most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in covered employment at least thirty working days."

Upon all of the above, the final decision of the Circuit Court of Kanawha County, West Virginia, is hereby reversed.

Reversed.