338 S.E.2d 178

**Mary ROSS, Brenda Skeens, Sheila Perry, Linda Benson, Nina Vance, Eunice Cremeans, Patty Chaput, Linda Gillespie, Judy Thomas, and Darlene Conner**

**v.**

**Phyllis J. RUTLEDGE, Clerk of the Circuit Court of Kanawha County; Board of Review of the West Virginia Department of Employment Security, J.F. McClanahan, as Chairman, C.C. Elmore, Jr. and Gregory E. Elliot, as Members; Nyle Hughes, as Commissioner; and Corbin, Ltd., a Corporation, Employer.**

**No. 16741.**

Supreme Court of Appeals of
West Virginia.

Dec. 11, 1985.

Charles M. Kincaid, Huntington, for appellants.

P. Thomas Kreiger, Paul Billups, Huntington, for appellees.

McGRAW, Justice.

This is an appeal from a final order of the Circuit Court of Kanawha County which affirmed the decision of the Board of Review of the West Virginia Department of Employment Security disqualifying the appellants, ten former employees of Corbin, Ltd., from receiving unemployment compensation. The appellants were all disqualified upon a determination that they terminated their employment voluntarily without good cause.

The facts pertinent to this appeal are substantially undisputed. Corbin, Ltd., has, for many years, owned and operated two clothing manufacturing facilities in Huntington, West Virginia. In late No-

vember of 1983, Corbin moved one facility, its coat manufacturing plant, from Huntington to Cannonsburg, Kentucky. The distance between the old plant and new plant is 19.8 miles.

Prior to the move, the employer sought employee input regarding anticipated problems associated with the change in locations. The increase in time and expense in traveling to Cannonsburg was a major concern. In response, the employer compiled a list of those fellow employees interested in car pooling arrangements. Subsequent to the move the employer also installed a citizens band radio at the new plant on which employees, if they have a similar radio in their vehicles, can request the summoning of roadway assistance in emergencies.

Although most of the employees who worked at the old plant continued their jobs after the relocation, twenty-one employees quit their jobs at the time of the move, or shortly thereafter. The ten appellants involved in this proceeding are from this latter group.

The appellants filed for unemployment compensation. The reason for quitting, as stated in each of the ten applications, relates directly to hardships caused by the added distance to work. The varying circumstances and places of residence, most often in remote rural areas, presented a range of problems created or exacerbated by the employer's move to Kentucky. A consideration common to all of the appellants was that the added time and expense of travel made the practicality of the jobs questionable in view of the fact that they were only guaranteed a five-hour workday. Additionally, increased baby-sitting expenses and being too far away from young children in case of emergency were compelling considerations in some cases. For those transporting children to and from baby-sitters, car pooling arrangements were impossible and in other instances attempts to find persons in the same area willing to car pool proved futile. The record indicates that the appellants remain willing to work in Huntington, and at least one made a request for transfer to the employer's other plant still in Huntington, which was apparently denied.

In the initial determination of their claims, the decisions of Deputy Commissioners for the Department of Employment Security varied—some claimants were found disqualified for leaving work without good cause while others were found qualified due to good cause for their quit. The aggrieved party in each case, employer or claimant, appealed to the Board of Review. After a consolidated evidentiary hearing before an Administrative Law Judge, the ALJ concluded that all twenty-one original claimants had "not demonstrated a substantial change in working conditions that would justify them in quitting their jobs." The Board of Review subsequently adopted the ALJ's findings and affirmed. The ten claimants involved herein then appealed to the Circuit Court of Kanawha County, and by order dated April 17, 1985, the court affirmed the decision of the Board of Review.

West Virginia Code § 21A–6–3 (1985 Replacement Vol.) specifies the various reasons whereby an individual, otherwise eligible, may be disqualified from receipt of unemployment compensation. In this case, the relevant provision, contained in subdivision (1) of the statute, provides that an individual is disqualified if he or she leaves "work voluntarily without good cause involving fault on the part of the employer...." It is not disputed that the appellants left voluntarily, in the sense that they were not fired or laid off.[1] Likewise, fault

---

1. The interplay between the concepts of "voluntariness" and "good cause" was noted in *Gibson v. Rutledge,* 171 W.Va. 164, 166–167, 298 S.E.2d 137, 140 (1982):

 "Voluntarily" and "involuntarily" are antonymous and therefore irreconcilable words, but the words are merely symbols of ideas, and the ideas can be readily reconciled. Willingness, wilfulness, volition, intention reside in "voluntarily," but the mere fact that a worker wills and intend to leave a job does not necessarily and always mean that the leaving is voluntary. Extraneous factors, the surrounding circumstances, must be taken into the account, and when they are examined it may be found that the seemingly voluntary, the apparently intentional, act was in fact involuntary. A worker's physical and mental condition, his personal and family problems,

involving the employer is not at issue since it appears undisputed that the employer's move to Kentucky was the reason behind the decision of each appellant to quit. The sole question in each instance is whether the claimant had "good cause" for not continuing to work at the relocated plant.

The determination of whether there is "good cause" for ceasing employment within the meaning of West Virginia Code § 21A–6–3(1) (1985 Replacement Vol.) is a question of law which must be answered in relation to the particular facts of each case. This question has been addressed by this Court in a number of recent cases involving a variety of factual settings. In *McDonald v. Rutledge*, 174 W.Va. 649, 328 S.E.2d 524 (1985), we held that a recurring injury that physically prevents a worker from completing assigned duties is a compelling reason to leave work. Our holding in *McDonald* reaffirmed the rule recognized in *Gibson v. Rutledge*, 171 W.Va. 164, 298 S.E.2d 137 (1982), that "an employee who has been compelled to terminate his employment for reasons of health cannot be said to have voluntarily quit his job." 171 W.Va. at 167, 298 S.E.2d at 141. As delineated in *McDonald*, while "temporary symptoms of adjustment" clearly fall short of this principle, when one's decision to leave work is compelled by necessitous circumstances, the involuntary nature of the termination is equivalent to good cause. 174 W.Va. at 650, 328 S.E.2d at 525.

Beyond health-related reasons, in *Lough v. Cole*, 172 W.Va. 730, 310 S.E.2d 491 (1983), this Court was presented a situation where an employee left his work to seek other employment because his employer was in the process of going out of business. The employee promptly found other employment but, unfortunately, this second employer went out of business before he had worked thirty days. This Court concluded that the claimant's voluntary separation from his former failing employer was not grounds for disqualification from receiving unemployment compensation. Compelling circumstances beyond his control had furnished good cause for leaving. Although his alternative employer unfortunately succumbed to the fate that he sought to avoid by leaving his former employer, it was "commendable that the petitioner sought other employment." 172 W.Va. at 734, 310 S.E.2d at 495.

Finally, in a case somewhat analogous to the issue in the proceeding at hand, the "good cause" question related to the terms and conditions of employment. In *Murray v. Rutledge*, 174 W.Va. 423, 327 S.E.2d 403 (1985), the claimant was hired as a full-time restaurant manager and, following an initial kitchen staff training program, her duties were not to include food preparation and customer service. Some months later, however, her employer informed her that in addition to her managerial duties she would also have to work in the kitchen. The result was a significant increase in both duties and working hours, with no increase in compensation. Upon review of similar cases from other jurisdictions, we concluded that under West Virginia Code § 21A–6–3(1) (1985 Replacement Vol.), substantial unilateral changes in the terms and conditions of employment furnished "good cause" for leaving work. Similarly, the case at bar presents a situation where a condition of employment was unilaterally changed by the employer. The specific question remaining is whether the change in location imposed necessitous or compelling circumstances upon the appellants suf-

the authoritative demand of legal duties— these are circumstances that exert pressure upon him and imperiously call for decision and action.

When therefore the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances compel the decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have compelled it. [Footnote omitted] Or to state it differently, if a worker leaves his employment when he is compelled to do so by necessitous circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is entitled to benefits. The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment. (quoting *Bliley Electric Company v. Unemployment Compensation Board of Review*, 158 Pa.Super. 548, 556 45 A.2d 898, 903 (1946). *See also Rhodes*

ficient to declare that, as a matter of law, good cause existed for discontinuing employment after the move to Kentucky.

 The determination of whether the relocation of a work site is a sufficiently compelling reason for leaving work will vary with the particular circumstances of each individual claimant.[2] Where the hardships imposed by employer relocation are not so substantial that reasonable accommodations by the employee could alleviate the particular problems, a decision to leave employment is without good cause. Conversely, good cause exists where the claimant shows that transportation and related problems created by the employer's move are substantial and that practical solutions to such problems do not exist or proved unworkable.

Two recent Pennsylvania decisions are illustrative. First, in *Lee v. Commonwealth*, 42 Pa.Commw. 461, 401 A.2d 12 (1979), the court found disqualification proper where the claimant terminated her employment when her employer's plant was moved a distance of eleven miles. The court's conclusion that necessitous or compelling circumstances were absent was based upon the findings and conclusions that:

> The record in this case reveals that the appellant had several viable transportation opportunities available to her including having her husband drive her to work or to the bus stop one and one-half miles away and that her husband could buy her a car to drive to work or to drive

to the bus stop. Under these circumstances, we believe that the findings of fact as a matter of law support the denial of unemployment compensation benefits.

On the other hand, in *J.C. Penney Co., Inc. v. Commonwealth*, 72 Pa.Commw. 445, 457 A.2d 161 (1983), the employer moved the location of its office from downtown Philadelphia to Voorhees, New Jersey, a distance of twelve miles. Commuting to the new location on available public transit required a 20 to 25 minute trip each way at a cost of approximately twelve dollars per week. No pay increase to offset the added travel expense was offered by the employer. Eighty-two employees, who lived in central Philadelphia and nearby suburbs, quit as a result of the office relocation. Reviewing the decision of the Unemployment Compensation Board of Review that the claimants were qualified to receive benefits, the court first noted that:

> The law is clear that while transportation inconveniences may provide a necessitous and compelling cause for leaving employment, they must be so serious and unreasonable as to present a virtually insurmountable problem, and the claimant must demonstrate that he or she took reasonable steps to remedy or overcome the transportation problems prior to severing the employment relationship.

72 Pa.Commw. at 448, 457 A.2d at 162 (quoting *Lee v. Unemployment Compensation Board of Review, supra*).

The court went on to conclude that:

> bargaining agreement with their employees, providing that any plant relocation was restricted to a twenty-five mile radius of their former plant, demonstrates the reasonableness of their move. Irrespective of the overall reasonableness of their decision to relocate, particular circumstances of some employees may render the change unreasonable in their cases. Moreover, the circuit court was correct in determining that "the Board of Review was wrong in concluding that the 25-mile provision of the collective bargaining agreement constitutes a contractual 'waiver' of statutory unemployment compensation benefits to employees terminating employment after a relocation...." A collective bargaining agreement cannot waive statutory rights enacted for the benefit of people working in this State.

---

*v. Rutledge,* 174 W.Va. 486, 327 S.E.2d 466 (1985).

2. At this juncture, we note that the Board of Review placed considerable emphasis on the fact that most of the employees working at the former plant continued working after the relocation. This "head count" approach ignores the fact that many of the employees, particularly those living in Ohio and Kentucky, live closer to the new plant than to the old one, or the increase in distance to the new plant from their homes was relatively insignificant. More importantly, however, we emphasize that a proper inquiry focuses upon the *particular circumstances of the claimants themselves.*

Along these same lines we note that the appellee-employer places great weight upon the contention that the provision in their collective

Penney's argument that claimant failed to take reasonable steps to overcome their problems is not persuasive.

\* \* \* \* \* \*

There is evidence in the record that these claimants were acquainted with the possible forms of transportation. Penney provided information about the available means, and several of the claimants did explore the alternatives. Penney points out in its brief that some rode the high-speed line, drove to the new office, or attempted to form carpools. However, each of the claimants found the alternatives to be unworkable.

In each case we must closely examine all of the circumstances in order to determine what behavior will constitute "reasonable steps" on the part of the claimant. A person need not actually spend an additional 10% of a weekly salary in transportation costs in order to determine that the expenditure is not economically feasible. Under the circumstances of this case, we will not disturb the board's conclusion that claimants carried their burden of proving a necessitous and compelling cause of leaving their employment.

72 Pa.Commw. at 448–49, 457 A.2d at 162–63.

The *Penney* court rested its decision upon the economic impracticalities of the increased travel. Similarly, the claimants in the instant case have presented a persuasive argument that, given only a guarantee of 25 working hours per week, the costs involved with 200 miles of additional travel per week substantially changed their expected post-expenses compensation. Additionally, in some instances, the increased burdens and expenses associated with family obligations such as child care provided further justification for finding the relocated job impractical or impossible. *E.g. In re Claim of McEvoy*, 89 A.D.2d 1049, 456 N.Y.S.2d 110 (1982) (claimant's refusal to relocate not for purely personal noncompelling reasons, but was necessitated by her domestic obligations and the cost prohibitiveness of suitable daycare); *see also Martin v. Review Board*, 421 N.E.2d 653 (Ind.App.1981) (claimant refusal to work 4 p.m. to midnight shift due to transportation and babysitter problems constituted "good cause").

 Accordingly, we hold that under West Virginia Code § 21A–6–3(1) (1985 Replacement Vol.), a job relocation due to an employer's decision to move may constitute a substantial unilateral change in the conditions of employment furnishing good cause for leaving work where the claimant demonstrates that transportation problems or other hardships created by the employer's move imposed necessitous or compelling reasons to cease employment.

Based upon the foregoing, we conclude that the appellants are not disqualified from the receipt of unemployment compensation and therefore, the judgments below are reversed. Pursuant to West Virginia Code § 21A–7–28 (1985 Replacement Vol.), the case is remanded to the Board of Review of the Department of Employment Security with instructions to enter orders consistent with the Court's opinion herein.

Reversed and remanded.