Robert Rivers, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent; Westinghouse Electric Corporation, Intervening Respondent.

Argued February 27, 1978, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*Richard P. Perna*, for appellant.

*Judith E. Harris*, with her *Harris and Kahn*, for intervening appellee.

OPINION BY JUDGE MENCER, July 10, 1978:

At 9:35 p.m. on the evening of April 15, 1975, Reuben Hall, private investigator, entered the Monte Carlo Club. He and his partner, Frank Ford, had been investigating Robert Rivers for 8 days, and it seemed as though the Monte Carlo Club held the key to unlocking their case. Using the alias, Joseph C. Hill, Reuben Hall was introduced to Robert Rivers by "Sis," an attractive barmaid.

Although the above scenario could be the start of a dime-store mystery, it actually represents a summary of a portion of the evidence in the record of this unemployment compensation appeal. Robert Rivers (claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) denying him benefits. The Board's order reversing the

referee was based on a finding of willful misconduct under Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Since a crucial finding of fact is not supported by the evidence, we reverse.

Prior to March 10, 1975, claimant had worked for Westinghouse Electric Corporation for almost 24 years. On March 11, he began a disability leave from his position as a fitter which, according to his testimony, involved "partly heavy" work.[1] Claimant completed and signed a form sent to him by Westinghouse on March 21, entitled "Statement of Claim—Accident and Sickness Weekly Disability Benefits." This form contained the following statement:

> I certify that in applying for accident and sickness insurance I am totally disabled and unable to work for either myself or any company and will return to work as soon as possible.
>
> I further understand that falsification of information could result in termination or recovery of all money paid or termination of my employment.

The reverse side of the form was completed on March 25 by claimant's physician, Dr. Litten, who diagnosed claimant's illness as "flu-bronchitis; viral pneumonia" and estimated that he would be able to return to work on April 24, 1975.

At some point, Westinghouse became suspicious about the validity of the disability claim. Although they had a practice of requiring a claimant to undergo a medical examination by a company doctor where the state of health was in dispute, this was not requested here. Instead, Reuben Hall and Frank Ford

---

[1] Westinghouse offered no evidence as to what claimant's duties as a fitter involved. He was apparently a member of the United Electrical Workers.

of the Wackenhut Corporation were hired to conduct a surveillance of claimant. The surveillance began on April 7, 1975 and continued on a daily basis, with the exception of April 12, until April 16. Claimant's residence was periodically observed during this period, and he was followed when he left his house. Westinghouse's evidence indicated that on April 15 Hall and Ford followed claimant to the Monte Carlo Club at about 10:15 a.m., where claimant unlocked the door and remained for approximately two hours. One of the investigators entered the club during this period and observed claimant sweeping the doorway, placing two bottles behind the bar, and spending time in the kitchen. When claimant returned to the club that evening, he was introduced to Reuben Hall by "Sis" as "the owner of the Monte Carlo Club." On April 16, he was again observed entering the club, but the surveillance was terminated shortly after he entered.

By telegram of April 25, claimant was notified by Westinghouse that his overall attendance record, his current absence, and claim for benefits were being evaluated and that he should not report to work until notified. Claimant's evidence indicated that on April 28 Dr. Litten signed a statement indicating that claimant had been under his care from March 11 to April 27, that he had seen him on March 11, 18, 25, April 1, 7, 14, 21, and 28 and that he was able to return to work on April 28. Claimant reported to work on April 28 but was told to leave pending completion of the evaluation. By telegram of May 2, 1975, Westinghouse notified him that his employment had been terminated as of March 10, 1975, the last day he worked.

Based on an extensive record, compiled during three hearings, the referee granted benefits, reasoning that claimant had been discharged merely due to Westinghouse's suspicions concerning his disability

claim. On appeal, the Board reversed and denied benefits. Upon reconsideration, the Board again denied benefits and made the following findings of fact:

3. A private investigation disclosed that the claimant left his home on a number of occasions and frequented a business location in another area.

4. A private investigation conducted by the employer revealed that claimant, during the time he was allegedly disabled, performed services such as setting up the bar, sweeping the floor and working in the kitchen of a business establishment known as the Atmosphere Lounge. The establishment was also known as Monte Carlo Club.

5. An employee of the Atmosphere Lounge introduced the claimant to an investigator as being the owner of the business.

6. Claimant was discharged for violation of company rule A-11 which calls for immediate discharge if an employee engages in 'falsification of records, reports, time cards or claims for benefits.'

7. Claimant falsified his disability claim with the employer.

However, the Board made no mention of the dates on which he had been seen at the Monte Carlo Club.

On appeal to our Court, claimant has argued that finding of fact 7 is not supported by the evidence and, without this finding, willful misconduct has not been established. The burden of proving willful misconduct is on the employer. Where, as here, the party with the burden of proof has prevailed before the Board, our scope of review is limited to questions of law and a determination of whether any necessary finding of fact is not supported by substantial evidence. *Roach v. Unemployment Compensation Board*

*of Review,* 31 Pa. Commonwealth Ct. 424, 376 A.2d 314 (1977). While the party prevailing below is to be given the benefit of any inferences which can be drawn from the evidence, such inferences must be arrived at reasonably and logically. *See Nehi Bottling Co. v. Unemployment Compensation Board of Review,* 27 Pa. Commonwealth Ct. 251, 366 A.2d 594 (1976); *Rice v. Unemployment Compensation Board of Review,* 19 Pa. Commonwealth Ct. 592, 338 A.2d 792 (1975). A conclusion of willful misconduct by the Board will not stand if it is based on a finding of fact which cannot be reasonably inferred from the evidence. *See Berner Unemployment Compensation Case,* 211 Pa. Superior Ct. 318, 236 A.2d 840 (1967) (insufficient evidence to support finding of violation of company rule).

Here, Westinghouse's evidence, at most, indicated that, *on April 15, 1975,* claimant could do some light work for a short period of time.[2] This does not, however, tend to prove that he was not telling the truth when he stated, *on March 21, 1975,* that he was totally disabled and unable to work for any company. It is conceivable, and indeed very likely, that a person suffering from viral pneumonia and bronchitis will show some improvement over a 3½-week period. Considering the time span of 3½ weeks, the light nature of the activities which claimant was doing, the relatively short period of time he was observed engaging in these activities, and the fact that Westinghouse presented no medical evidence in support of its position,[3] we

---

[2] Although Westinghouse's evidence may have tended to indicate that claimant had a proprietary interest in the Monte Carlo Club, this fact is not relevant on the question of whether he falsified his disability claim.

[3] One must question the wisdom of not making a request for a medical examination in a case such as this, since this appears to be a simple and expeditious manner of testing the veracity of a disability claim. The advantages of hiring two private investigators to follow a claimant over a 9-day period are not readily apparent.

must conclude that finding of fact 7 was not a reasonable and logical inference.

Westinghouse's reliance on *Romeo Unemployment Compensation Case,* 199 Pa. Superior Ct. 33, 184 A. 2d 274 (1962), is misplaced. There, the claimant reported her absence due to illness on January 2 and was found working in the family store by her employer's representative on January 6. First, a much shorter time period was involved there. Moreover, the claimant in *Romeo* had signed a statement in which the reason for the termination of her employment was listed as "[f]alsification, working while being paid sick leave." 199 Pa. Superior Ct. at 34, 184 A.2d at 275. Such an admission is not present here.

In the alternative, Westinghouse has argued that this Court should either affirm on the other findings of fact or remand for additional findings. We have held that a claimant's conduct during a period of absence due to illness or injury may amount to willful misconduct. *See, e.g., Williams v. Unemployment Compensation Board of Review,* 34 Pa. Commonwealth Ct. 640, 383 A.2d 963 (1978) (failure to give a status report as instructed); *Unemployment Compensation Board of Review v. Kennedy,* 18 Pa. Commonwealth Ct. 248, 334 A.2d 849 (1975) (failure to contact employer after release by physician to return to work). Here, however, it was, at best, unclear as to what a claimant on disability leave was required to do as his health improved. His certification on the claim report that he would "return to work as soon as possible" is ambiguous. He reasonably could have interpreted this statement to require only his return as soon as he could perform his job as a fitter. Westinghouse, however, offered no evidence indicating that the light activities he engaged in over a short period of time were as strenuous or taxing as his duties as a fitter, which claimant had described as "partly

heavy." In addition, claimant's evidence indicated that he was not released by his physician to return to work until well after the observations on April 15. In summary, Westinghouse has simply failed to produce evidence which could fulfill its burden of proving willful misconduct. *Unemployment Compensation Board of Review v. Bacon*, 25 Pa. Commonwealth Ct. 583, 361 A.2d 505 (1976). Under these circumstances, a remand is unnecessary and we will reverse the Board.

ORDER

AND Now, this 10th day of July, 1978, the order of the Unemployment Compensation Board of Review, dated December 29, 1976, denying benefits to Robert Rivers, is hereby reversed, and the award of benefits by the referee, dated November 14, 1975, is hereby reinstated.

Judge WILKINSON, JR., dissents.