# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Colonial House, Inc.,           :
                              :
            Petitioner        :
                              :
           v.               : No. 1659 C.D. 2016
                              : Submitted: September 22, 2017
Unemployment Compensation  :
Board of Review,          :
                              :
          Respondent      :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**              **FILED: November 14, 2017**

Colonial House, Inc. (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board) affirming the determination by a Referee that Employer did not meet its burden of proving that Julie A. Lober (Claimant) engaged in willful misconduct that would disqualify her for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] For the reasons that follow, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to willful misconduct connected to his or her work. *Id*.

Claimant worked at Employer as a full-time Food Service Manager from February 11, 2003 through May 12, 2016. (Record (R.) Item 16, Referee Decision and Order, Finding of Fact (F.F.) ¶1; July 4, 2016 Hearing Transcript (H.T.) at 8, Reproduced Record (R.R.) 9.) Employer operates a treatment facility for individuals with drug and alcohol issues, with the majority of the residents participating in court-mandated treatment. (R. Item 16, Referee Decision and Order, F.F. ¶5; H.T. at 18, R.R. 19.) Employer regularly assigns residents to assist Claimant in the kitchen, but Claimant is not familiar with the diagnosis or treatment of any of the residents with whom she interacts. (R. Item 16, Referee Decision and Order, F.F. ¶¶6, 7.) On May 10, 2016, Claimant was on the telephone placing a time-sensitive food order when a resident informed her that the waste disposal service had arrived and Claimant would need to move her car so that the workers could empty the dumpster. (*Id*., F.F. ¶8.) Claimant was walking towards the door to move her car when the resident informed her that he had a driver's license and he could move the car so she could continue her telephone call. (*Id*., F.F. ¶¶9, 10.) Claimant gave the resident her keys, and he moved her car approximately 20 feet to allow access to the dumpster. (*Id*., F.F. ¶11.) An investigation of this incident by Employer revealed that the resident was not in fact in possession of a valid driver's license. (*Id*., F.F. ¶13.) Employer terminated Claimant's employment on May 12, 2016. (*Id*., F.F. ¶14; H.T. at 8, R.R. 9.)

Claimant filed an initial claim with the Department of Labor and Industry on the day of her discharge. (R. Item 2, Internet Initial Claim.) The Unemployment Compensation Service Center issued a determination on June 1, 2016 finding Claimant ineligible for benefits under Section 402(e) of the Law. (R. Item 6, Notice of Determination.) Claimant appealed and a hearing was held before

a Referee on July 14, 2016. Claimant, who was represented by counsel, testified at the hearing, and she also presented the testimony of a former maintenance worker at Employer. Employer's Director of Operations and Director of Inpatient Treatment also testified. On July 22, 2016, the Referee issued a decision reversing the Service Center determination that Claimant was ineligible for benefits. (R. Item 16, Referee Decision and Order, Reasoning at 3, Order.) Employer appealed the Referee's decision to the Board, which affirmed, adopting the Board's findings of fact and conclusions of law. (R. Item 18, Board Order.) Employer then petitioned this Court for review of the Board's order.[2]

Employer argues that it presented substantial evidence to the Board to meet its burden of proof that Claimant violated Employer's rule prohibiting unprofessional conduct between a staff member and a resident. Employer asserts that, while the Board found that Employer had a policy prohibiting unprofessional interactions between staff and residents and Claimant was aware of the rule, the Board failed to analyze whether Claimant violated that rule.

In unemployment compensation cases, the burden of proving willful misconduct falls on the employer. *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 (Pa. 1997); *Scott v. Unemployment Compensation Board of Review*, 36 A.3d 643, 647 (Pa. Cmwlth. 2012). Willful misconduct is defined by the courts as (i) an act of wanton or willful disregard of the employer's interest; (ii) a deliberate violation of the employer's rules; (iii) a disregard of standards of behavior which the employer has a right to expect of an

---

[2] Our scope of review of the Board's decision is limited to determining whether errors of law were committed, constitutional rights or agency procedures were violated, and necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704; *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 710 n.4 (Pa. Cmwlth. 2013).

3

employee; or (iv) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer. *Caterpillar*, 703 A.2d at 456; *Scott*, 36 A.3d at 647. If the employer makes its showing, the burden shifts to the claimant to show good cause for her conduct. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 719 (Pa. Cmwlth. 2013); *ATM Corporation of America v. Unemployment Compensation Board of Review*, 892 A.2d 859, 865 (Pa. Cmwlth. 2006). The question of whether a claimant's actions constitute "willful misconduct" is a question of law subject to this Court's review. *Rossi v. Unemployment Compensation Board of Review*, 676 A.2d 194, 197 (Pa. 1996).

Where a violation of the employer's work rule is alleged to be the basis for termination of employment, the employer must show that the rule existed, that the rule was reasonable and that the claimant was aware of the rule and violated it. *Williams v. Unemployment Compensation Board of Review*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007). Furthermore, a determination of whether conduct amounts to willful misconduct requires an examination of the entire circumstances, including the reasons for the employee's noncompliance with the employer's rules. *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 426 (Pa. 2003); *Navickas v. Unemployment Compensation Board of Review*, 787 A.2d 284, 288 (Pa. 2001). Inherent in any "willful" misconduct case is an investigation into the state of mind of the claimant; "[a] negligent act alone does not constitute willful misconduct; rather, the conduct must be of 'an intentional and deliberate nature.'" *Fugh v. Unemployment Compensation Board of Review*, 153 A.3d 1169, 1176 (Pa. Cmwlth. 2017) (*en banc*) (quoting *Grieb*, 827 A.2d at 426). As this Court has explained, the use of the terms "willful," "intentional" and "deliberate" "all include an element

4

indicating a consciousness of wrongdoing on the part of the employee." *Eshbach v. Unemployment Compensation Board of Review*, 855 A.2d 943, 947 n.6 (Pa. Cmwlth. 2004) (*en banc*); *see also MacFarlane v. Unemployment Compensation Board of Review*, 317 A.2d 324, 326 (Pa. Cmwlth. 1974).

It is undisputed here that Claimant, while busy placing a food order by telephone, gave a resident her car keys so that the resident at the treatment facility that Employer operates could move her car approximately 20 feet to allow the waste disposal service to empty a dumpster. It is further undisputed that the resident affirmatively offered to move Claimant's car and stated he had a driver's license, but in fact it was later discovered that he did not have a license. Employer maintained a "Cause for Dismissal" policy that provided that any "socializing, intimate behavior, cohabitation, or unprofessional conduct between staff members and resident[s]" is cause for dismissal. (R. Item 16, Referee Decision and Order, F.F. ¶3; R. Item 3, Service Center Exhibit 11.) Employer's Code of Ethics required that staff members "shall maintain at all times an objective non-possessive, professional relationship with clients." (R. Item 16, Referee Decision and Order, F.F. ¶2; R. Item 3, Service Center Exhibit 10.) Employer's employee handbook also stated that staff was "expected to maintain professional relationships with clients"; this document specifically banned staff from accepting gifts, favors or remuneration from clients or performing services or engaging in activities unrelated to the normal services Employer provided. (H.T. at 22-23, R.R. 23-24; R. Item 15, Claimant Exhibit 1 at 4.) The handbook further states: "If a client is asked to perform tasks for personal staff requests, clients are paid by the staff members at

5

least the minimum hourly rate of pay."[3]  (R. Item 15, Claimant Exhibit 1 at 4.) Claimant acknowledged receipt of each of these policy documents.  (R. Item 16, Referee Decision and Order, F.F. ¶¶2, 3; H.T. at 23, 34-35, R.R. 24, 35-36; R. Item 3, Service Center Exhibits 9-11.)   Employer did not maintain a policy that specifically forbids residents from driving, and residents were not locked inside the facility but instead were permitted to leave at any time.  (H.T. at 25, 29, R.R. 26, 30.)

Employer's Director of Operations testified at the Referee's hearing that she and Employer's Chief Executive Officer determined that Claimant's actions constituted an "extreme violation" of the prohibition on unprofessional conduct between staff and residents in the Causes for Dismissal policy.  (H.T. at 16, R.R. 17.)   The Director of Operations further testified that Claimant's actions were grounds for an immediate discharge based on her negligence pursuant to Employer's disciplinary policy which allowed Employer to bypass its normal progressive disciplinary steps and proceed directly to involuntary discharge based on a single incident when an employee engages in a policy violation or misconduct of a "very

---

[3] The handbook provides in full:

***Code of Conduct with Clients:***

In order to maintain the reputation of [Employer], all staff members are expected to maintain professional relationships with clients.  To avoid even the appearance of any impropriety of that relationship, staff members may not accept gifts, favors, or any form of remuneration from clients.  Similarly, staff members should not perform services for clients outside of the [Employer] program or engage in unrelated activities for the benefit of clients- e.g., making deliveries, performing car repairs, etc.

If a client is asked to perform tasks for personal staff requests, clients are paid by the staff members at least the minimum hourly rate of pay.

(R. Item 15, Claimant Exhibit 1 at 4 (emphasis in original).)

6

serious nature," including negligence. (H.T. at 16, R.R. 17; R. Item 3, Service Center Exhibits 14, 14a.) The Director of Operations explained that Claimant was negligent because the incident could have "ended very poorly" for Employer, with the resident driving off in Claimant's vehicle or Employer losing its contracts with the state or behavioral health organizations. (H.T. at 16-17, R.R. 17-18.)

Employer argues that Claimant violated its rule prohibiting "unprofessional conduct between staff members and resident[s]" by providing the resident her car keys and allowing him to move her car 20 feet. As Employer correctly asserts, the Board did not directly address whether Claimant violated its "unprofessional conduct" rule. However, following a thorough review of the record, we conclude that Employer did not show that Claimant's actions constituted a deliberate violation of Employer's work rules. The "unprofessional conduct" rule includes specifically prohibited categories of activities for staff such as intimate relationships with residents or interactions in which money changes hands. The current case does not fall into one of these categories, however, and to apply this rule to instances where an employee allows a resident to move her car a short distance would stretch the rule so far as to render it meaningless. *See Unemployment Compensation Board of Review v. Bacon*, 361 A.2d 505, 507 (Pa. Cmwlth. 1976) (holding that a rule must provide "real standards of behavior or expectations of the employer which we could say that this claimant had consciously violated" such that a violation of the rule could serve as the basis for a willful misconduct finding). The absurdity of applying the prohibition on "unprofessional conduct" to ban Claimant allowing the resident to move her car is particularly evident in light of the provision

in the handbook that allows a staff member to ask a resident to perform personal "tasks" so long as the staff member pays the resident.[4]

Employer next argues that, even if it did not prove that Claimant violated the "unprofessional conduct" work rule, it satisfied its burden of proof to show willful misconduct by demonstrating Claimant's intentional disregard of Employer's interests and her duties and obligations to Employer. The Board held that Employer did not demonstrate that Claimant acted intentionally and deliberately, finding that Claimant had no reason to believe that the resident lied when he said he had his driver's license and that Claimant credibly testified that her actions were not negligent.[5] (R. Item 16, Referee Decision and Order, F.F. ¶12, Reasoning at 3; R. Item 18, Board Order.) The Board concluded that Claimant's actions were not unusual in light of the circumstance and no evidence had been presented of any wrongful intent on her behalf. (R. Item 16, Referee Decision and Order, Reasoning at 3; R. Item 18, Board Order.)

---

[4] While it could be argued that Claimant violated this policy because she did not pay or offer to pay the resident to move her car, (H.T. at 40, R.R. 41), Employer did not cite Claimant for a violation of this policy. Moreover, the record demonstrates that the resident did not perform a personal task for Claimant as both the need to move her car and the telephone call she was on that prevented her from moving the car herself were work-related.

[5] Employer argues that the Board erred in focusing on whether Claimant believed she had acted negligently when instead the Board properly should have analyzed whether Claimant's actions in lending her car keys to the resident were intentional and deliberate. As discussed above, the question of whether Claimant acted negligently was before the Board because Employer's progressive disciplinary steps policy permits immediate discharge in cases of employee negligence and Employer's Director of Operations testified that Claimant's termination was based on her negligence. While the primary focus in a willful misconduct case is whether the claimant acted intentionally and deliberately, the willful misconduct analysis requires an analysis of the claimant's state of mind including the "consciousness" of his or her alleged wrongdoing. *Eshbach*, 855 A.2d at 947 n.6; *MacFarlane*, 317 A.2d at 326.

The record shows that Employer maintained no rule specifically prohibiting Claimant's actions or prohibiting residents from operating a motor vehicle while at the facility. Claimant testified that she was placing a telephone order with a representative from the food supplier when the waste disposal company arrived to empty the dumpster. (H.T. at 31-32, R.R. 32-33.) Claimant said someone came into her office and told her that she needed to move her car immediately because the waste disposal company was "having a fit out there." (*Id*. at 32, R.R. 33.) Claimant stated that it was at that point that the resident offered to move her car out of the way of the dumpster and he volunteered that he had his license. (*Id*.) Claimant testified that at the time she lent her keys she had no information on the resident's history or criminal record, whether the resident was at Employer voluntarily or pursuant to a court order, whether the resident had a history of fleeing or whether the resident currently was in possession of a drivers' license. (*Id*. at 32, 39, R.R. 33, 40.) Claimant testified that she did not believe that her actions were negligent or that she willfully or unintentionally disregarded any of Employer's policies. (*Id*. at 33, R.R. 34.) While Employer's witnesses testified that Claimant's actions could have ended badly for Employer, Employer did not present any evidence that contradicted Claimant's testimony regarding her knowledge or state of mind when she lent her keys to the resident to move her car.

The Board is the ultimate finder of fact and arbiter of credibility in unemployment compensation matters, and the Board's findings are conclusive on appeal so long as they are supported by substantial evidence. *Henderson*, 77 A.3d at 718; *Bruce v. Unemployment Compensation Board of Review*, 2 A.3d 667, 671 (Pa. Cmwlth. 2010). We conclude that there is no error in the Board's determination

9

that Claimant did not act intentionally or deliberately in contravention of Employer's interests or her obligations to Employer.

Accordingly, the order of the Board is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Colonial House, Inc.,                          :
                                               :
                    Petitioner                 :
                                               :
            v.                                 :  No. 1659 C.D. 2016
                                               :
Unemployment Compensation                      :
Board of Review,                               :
                                               :
                    Respondent                 :

## ORDER

AND NOW, this 14th day of November, 2017, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**